## JONATHAN B. BECKWITH *vs.* CHARLES MOLLOHAN.

### January Term, 1868.

1. Where there is a variance between the writ and the declaration it can only be taken advantage of by plea in abatement. Code, 1860, page 711, section 18.

2. It is no cause of demurrer that a declaration contains counts applicable either to trespass or trespass on the case. Code, 1860, chapter 148, page 635, section 7.

3. If there are two counts in a declaration, and the second is not good without the aid of reference to the first by the use of the phrase "as aforesaid" as to the time, place, &c., and material allegations, it is proper to refer to the first and make the second good in that way—the first being a good one.

4. Declarations as parts of the *res gestæ* made at the time of the transaction, are regarded as verbal acts indicating a present purpose and intention, and are admissible in proof like any other material fact to be weighed by the jury for what they are worth. Therefore, where a declaration charges that, "the defendant did by force and great violence tie the plaintiff's hands behind him with a tarred rope," it was held proper to admit declarations made by the defendant at the time of tying as to his reasons for doing so.

*Charles Mollohan* sued out of the clerk's office of *Wood* county, a writ of trespass on the case against *Jonathan B. Beckwith*, returnable to August rules, 1865. At the same rules he filed a declaration alleging in substance, that the defendant had served in the so-called Confederate army, and that with others had in 1861, in *Kanawha* county, with force and arms seized and laid hold of the plaintiff; and after having so arrested him, that defendant did by great force and violence tie his hands behind him with a tarred rope and forced him on board a steamboat, and kept him guarded

*Absent from illness.

with bayonets and loaded muskets for the space of two days, and that defendant then forced the plaintiff to march twenty miles so tied to Camp Piat, and afterwards, at great pain and suffering, to march to *Roanoke Court House*, a distance of one hundred and fifty miles, where he was confined in jail for the space of three months; all of which was done without any reasonable cause and which disabled him greatly, and was against his will and consent. That he was put to great expense in procuring a release by operation of law, and in reaching his home.

The second count was in the following words: "And also, for that the said defendant, on the day and year aforesaid at the time aforesaid, with force and arms, &c., made another assault upon the plaintiff, to-wit: at the place aforesaid, then and there ill-treated him and imprisoned him and kept him or caused him to be kept and detained as aforesaid in prison as aforesaid, without any reasonable cause whatsoever, for a long space of time, to-wit: for the space of three months, against his will and consent, and contrary to law, and other wrongs and injuries then and there did to the plaintiff, to his damage 10,000 dollars. Therefore he sues."

The defendant demurred to the declaration, which was overruled, and he then entered the plea of not guilty. In October, 1865, the cause was tried and a verdict rendered for 4,000 dollars damages.

There was a motion for a new trial, which was refused, and the refusal made the subject of the fourth bill of exceptions, but this was not considered by this court and hence will not be mentioned.

The points considered by this court arose on the demurrer to the declaration, and on the first bill of exceptions. The substance of the first bill of exceptions was that, after the witness for the plaintiff below gave testimony detailing the arrest of the plaintiff, and that the defendant acted as one of the armed guard under a sergeant in the command of the so-called Confederate army, who arrested him, and was proceeding to state what the officer, who tied the plaintiff, stated at the time of doing so as his reasons for doing

Jan'y Term,            Beckwith *vs.* Mollohan.            1868.

so, the attorney for the plaintiff objected to the stating by the witness as to what the officer said at the time of tying the plaintiff. The attorney for the defendant insisted that the witness should be permitted to state what the officer gave as his reasons for binding or tying him; but the court refused to permit the witness so to state, and the defendant excepted.

The defendant obtained a writ of supersedeas from this court.

*Lee & Edmiston* for the plaintiff in error.

*B. F. Smith & J. M. Jackson* for the defendant in error. On the point considered by the court they in substance said : The defendant demurs to the declaration, and assigns as error, that the writ is in case and the *nar.* in trespass. The description of the form of action is omitted, but that is not sufficient error. See 1 Chitty, page 345. Declarations in trespass are known by certain words and allegations. The words force of arms used in this declaration might look as if it was intended for trespass, but it would not be a good declaration in trespass at common law without the word "peace." II Chitty pleading, page 369. If so, there was no necessity for the introduction of the statute to dispense with those words. See page 710, section 12, of the code, which makes it good without those words, and if the statute is not regarded as a nullity, those words can only be regarded as surplusage. See chapter 171 of the code, section 11. The action shall not abate for want of form, when there is sufficient substance for the court to act upon the merits of the cause. If there is a variance between the writ and the declaration, it is no cause for sustaining the demurrer. If he had been held to bail, it would only work a release of the bail, and the court would have proceeded with the trial of the cause. I vol. Chitty pleadings, page 255, 249, 232. The only object of the *nar.* in all causes is to notify the defendant of what the plaintiff expects to prove upon the trial of the cause, and thus limit the evidence. Is this not suffi-

ciently done in this cause, so as not to surprise the party upon the trial? If the words force and arms had been omitted, would it have placed the defendant in any better condition upon the trial? Certainly not, for he had the benefit of the plea of not guilty, which enlarges instead of diminishes his defence, therefore he has no cause of compaint on that ground.

The next objection of the appellant is on page 17. He thinks the court erred because it would not allow the declaration of one of the persons who was in company with the appellant when the appellee was tied, to be given in evidence. If it had been competent to have proven the fact, the party who made the declaration was the best evidence, but we wholly deny that the declarations or reasons assigned by one of the parties who was equally liable to the appellee for the wrongs so committed, could give his declaration to excuse himself from the offense so committed by him and others, to the appellee, if it was admissible evidence. We deny that it could have been proven by the witness on the stand, without laying some foundation for it. For it could not be regarded in any other light than secondary evidence. If he had been a subordinate officer, trusted with authority so to do, his own statement to prove the fact would not certainly be regarded as evidence. If he had been directed by his superior officers to have done the deed, still his declaration to excuse himself could not be given in evidence, to exculpate him, or those with him, who were equally guilty. If the declaration had been admitted, it would only have had a tendency to mislead the jury, and prejudice the rights of the appellee. Can any one give in evidence the declarations of one equally guilty with himself, to palliate the offense? What was actually done might have been proven, but certainly not their own words to justify the wrong so committed or done. If such was the law, could not all guilty parties relate sufficient before the commission of any offense to excuse themselves? Adopt such a rule, and every culprit will go unpunished. Such we regard has never been the acknowledged rule of law.

MAXWELL, J.    This was an action brought by Charles
Mollohan, the defendant here, in the circuit court of Wood
county, against Jonathan B. Beckwith to recover damages
for a personal wrong.    The writ is in trespass on the case
and was returnable to August rules, 1865.    On the return
day of the process, the same having been returned executed,
the said Mollohan filed in the clerk's office of said court his
declaration against the said Beckwith, and took a common
order which was confirmed at the next rules.    At the Sep-
tember term of the court following, the case was on the
docket when the defendant below appeared and demurred to
the declaration and to each count thereof, in which demur-
rer the plaintiff joined.    The court on full argument and
consideration overruled the demurrer to the declaration and
to each count thereof.    It is claimed by the plaintiff in error
that the court erred in overruling the demurrer to the decla-
ration; that the declaration was imperfect and uncertain;
that it contained counts applicable under our statute either
to trespass or trespass on the case; that the writ was in case
but the declaration fails to show whether it was in case or
trespass.    No variance in the writ from the declaration can
be taken advantage of in any other way than by plea in
abatement.    Code of Virginia, 1860, page 711, section 18.
It is no cause of demurrer since the statute, Code of Vir-
ginia, 1860, chapter 148, page 635, section 7, that the decla-
ration contained counts applicable either to trespass or tres-
pass on the case.    *Parsons* vs. *Harper*, 16 Gratt., 64; *Hood*
vs. *Maxwell*, 1 West Virginia Reports, 219.    It was admit-
ted in argument here that the first count is good in sub-
stance, but insisted upon that the second count is imperfect
and uncertain.    It is claimed that the second count does not
contain and charge within itself a good cause of action
without the references therein contained to the first count,
by which it is claimed it cannot be aided.    It has always
been the practice for a subsequent count to refer to a prece-
ding one for time, place, &c., which is done in the second
count in this case.    There are two other references in the
second count to the first, contained in the phrase "as afore-

said" twice used.   If the phrase "as aforesaid" in both in-
stances where it is used, be treated as surplusage and disre-
garded, then the count would be in substance good and
would be substantially the same as the form in 2nd Chitty's
Pleading, page 857.   But if the second count is not good
without the aid of the references to the first by the phrase
"as aforesaid" twice used it is proper to refer to the first
and make the second count good in that way, the first count
being a good one.   20 Johnson's Reports, 344; 6 Wendall,
409.   I think the demurrer was properly overruled.   The
record contains four bills of exceptions to rulings of the
court on the trial; Nos. 1, 2 and 4 taken at the instance of
the defendant below, and No. 3 taken at the instance of the
plaintiff below.   The questions raised in bills No. 2 and No. 3
have reference to the belligerent rights of the defendant
set up in his defense, and are not insisted on here because
they have been decided by this court in other cases.   The
first bill of exceptions is as follows: "Be it remembered,
that upon the trial of this cause the plaintiff gave evidence
that in July, 1861, he had been arrested in the county of
Kanawha by armed men claiming to act under orders of of-
ficers connected with the rebel army, then in the valley of
the Kanawha river, under the command of the rebel Gen-
eral H. A. Wise; that after he had been so arrested by said
armed men he was placed in the jail of Kanawha county
and there kept for some days; that about the 23rd day of
July, 1861, he, with other prisoners arrested and confined
by said rebel officers and men, was removed from said jail
by a squad of armed men under the command of an officer
who was called a sergeant, and was placed upon a steamboat
and carried up the Kanawha river to a place called Piatt's
Landing; that the defendant acted as one of the armed
guard who attended them on the said boat; that when about
to be landed at said place for the purpose of being removed
further by land, the said sergeant in command of the pris-
oners tied their arms together with ropes preparatory to
marching them by land.   After the witness examined on
this subject had made the statement, he was proceeding to

state what the said officer who tied the prisoners, stated at the time of doing so his reasons for doing so.   The attorney for the plaintiff objected to his stating what the officer said at the time of tying the prisoners, and the counsel for the defendant insisted that the witness should be permitted to state what said officer so stated at the time as his reasons for binding them.   And the matter having been referred to the court, the court refused to permit the witness to state what was said by said officer at the time.   And to the opinion of the court refusing to permit the witness so to state, the defendant by his attorney excepts and prays that his exception be signed, sealed and made a part of the record, which is done accordingly."

It is insisted here that the court erred in refusing to allow the witness to state the reasons assigned for doing so by the officer who tied the defendant Mollohan, under the circumstances disclosed in this bill of exceptions. It is claimed that any declaration made at the time of the tying of the defendant in relation to the tying by any person engaged in it, is a part of the *res gestæ* and should be allowed to go in evidence to the jury along with the fact of tying. It is insisted here by the defendant in error, who was the plaintiff below, that it was not proper for the defendant below to insist on the witness making the statement at the time and in the manner it was done, but that it should have been done on cross-examination. If the objection had been put on this ground in the court below, there might, though I doubt it, have been something in it, but it is too late now to do so for the first time. I think the only question raised in the bill of exceptions, is, was the defendant entitled to the benefit of the declarations of the officer made at the time he tied the prisoner. It is distinctly charged in the declaration that "the defendant did by force and great violence tie the plaintiff's hands behind him with a tarred rope." The proof on the trial as shown by this bill of exceptions was that an officer in command of a squad of men, of which squad the defendant was one, tied the prisoner's arms. The act of the officer in tying the plaintiff is given in evidence

against the defendant. Was not the defendant entitled to the benefit of any declarations the officer made at the time of tying the plaintiff in relation to the tying, to go in evidence to the jury as part of the *res gestæ* for what they might be worth. It is a well settled rule that declarations as parts of *res gestæ*, made at the time of the transaction, are regarded as verbal acts indicating a present purpose and intention, and are, therefore, admitted in proof like any other material fact to be weighed by the jury for what they are worth. 1 Greenleaf's Ev., section 108; 5 T. R., 512; 2 Bing. R., 99; 3 Kelly's R., 513; 14 S. & R., 275.

I think it clear that the defendant was entitled to have the evidence of the declarations of the officer, under the circumstances, go to the jury to be considered for what they were worth.

The fourth bill of exceptions is to the opinion of the court in refusing a new trial asked for by the defendant, but in the view taken of the case it is not necessary to decide the questions raised by this bill, as I am of opinion the judgment will have to be reversed, for the reasons already given, with costs to the plaintiff in error, and the cause remanded for a new trial.

The President concurred.

JUDGMENT REVERSED.