STAPLES, J.,
delivered - the opinion of the court.
The first assignment of error arises upon a question ashed a witness, and set out in the first bill of exceptions. This witness had testified that he went to the prosecutor’s house within a few minutes after the robbery was attempted; that the persons implicated in the robbery were described to him by Mrs. Priddy, the wife of the prosecutor; that he went immediately in pursuit of these persons, and found the prisoner and a man named Thos. Oakley, who is also under indictment for the same offence, and several other persons, in a bar-room about a mile distant from the prosecutor’s house; and after the witness had described the dress and general appearance of the prisoner, he was asked by the commonwealth’s attorney “Whether the prisoner and the said Oakley corresponded on that night, in dress and appearance, with two of the men described by Mrs. Priddy?” The witness answered “that they did.” The counsel for the prisoner insists that this was error; that the witness ought to have been *asked to describe the appearance and dress of the prisoner and his companion, so that the jury might judge whether they answered to the description given by the prosecutor’s wife in her testimony.
How, as a matter of fact, that precise course was pursued. The wife of the prosecutor did describe to the jury the appearance and dress of the persons engaged in the attempted robbery; and the other witness described the persons he saw in the bar-room. The jury were thus enabled to judge whether there were any material discrepancies in the description given by these witnesses respectively. But the commonwealth was not necessarilj’ restricted to this mode of examination. The description of the prisoners given a few minutes after the occurrence, was more likely to be correct than any given on a subsequent occasion. On the trial the wife of the prosecutor might fail to remember many particulars or details observed and remembered at the time of the robbery. Her description given to the witness a few minutes afterwards was a part of the res gestas. And it was entirely competent to the commonwealth to prove before the jury the particulars of that description, as was done by the witness without objection by the prisoner. This proof being adduced, there could be no valid objection to an enquiry of the witness whether the appearance and dress of the prisoner and his companion, as seen at the bar-room, corresponded with the description thus given. If it be conceded that the witness was thus requested to express an opinion, it is sufficient to say that upon questions of identity it is competent to the witness to give his opinion; the grounds upon which it rests being always open to the investigation of the adverse party. When the witness states that the prisoner at the bar is the same person *seen on a particular occasion, he is giving his opinion; and when he undertakes to describe the dress and appearance of the prisoner, it is still an opinion. The weight to which it is entitled depends upon his integrity, his intelligence, his accuracy and means of observation. In the present case the question asked the witness was not a violation of the rule, and the evidence thus elicited was clearly admissible.
The second error assigned was the refusal of the court to give the instruction asked for by the prisoner, and in giving another in lieu thereof, as set out in the second bill of exceptions. We do not deem it at all necessary to quote the language of either of these instructions. That given bjr the court in effect affirms the proposition, that if the prisoner, along with other persons, made an assault upon the prosecutor, intending to rob him of his property; and in the course of a scuffle between the parties, one of the assailants snatched a pistol from the hands of the prosecutor and carried it away, and converted it to the use of either of them, this constituted the offence of robbery by the prisoner.
The manifest objection to this instruction is, that it affirms as a conclusion of law, that certain enumerated acts constitute the crime of robbery, without the slightest reference to the intention with which those acts were done. It assumes, that although the prisoner, in taking the pistol, had no design to steal it, but simply to prevent the prosecutor from using it against his assailants, the prisoner may nevertheless be convicted, if he intended to rob the prosecutor of cither property not mentioned in the indictment.
We do not understand the learned judge of the Hustings court as denying that the animus furandi is an essential element in the crime of robbery. On the ^contrary; he affirms that it is. Indeed, the rule upon this subject is too well settled to be now called in question. The taking must in all cases be accompanied with the felonious intent, and no subsequent felonious purpose will render the previous taking felonious. As expressed by Lord Coke, “the intent to steal must be when it cometh to his hands or possession; for if he hath the possession of it unlawfully, though he hath animum furandi afterward and carrieth it away, it is no larceny.”
It is not enough that the prisoner had at the same time an intent to steal other goods; the felonious intent must exist with regard to the goods charged in the indictment. Roscoe 838; 2 Arch. Cr. Pr. & Plead. 508.
This principle is exemplified by a case in which it was held, that the taking was a mere trespass, although the original assault was clearly with a felonious intent. A assaulted B on the highway, cum animo furandi, and searched his pockets for money; but finding none, A pulled off the *627 bridle of B’s horse and threw that and some bread which B had in pannels, about the highway; but did not take anything from B. It was resolved, upon conference with all the judges, that this was no robbery, because nothing was taken from B. But East, in his pleas of the crown, says that the better reason seems to be, tha.t the particular goods taken were not taken with a felonious intent; for surely there was a sufficient taking and separation of the goods from the person. The same view of the case was taken by Russell and other writers on the criminal law.
In Rex v. Holloway, 24 Eng. C. E. R. 688, the prisoner was indicted for stealing a gun from the prosecutor, who was a game keeper. Vaughan, B., in summing *up, said, the prisoner might have imagined that the prosecutor would use the gun so as to endanger his life; and if so, his taking it under that impression would not be felony; but if he took it intending at the time to dispose of it, it would be felony. It was a question peculiarly for the jury.
And so in the case at bar, the prisoner and his associates in snatching the pistol from the prosecutor may not have intended at the time to steal it. If they did not so intend, if the only object was to prevent its being used against them, then the subsequent carrying away and conversion would not constitute robbery. On the other hand, if the intention at the time was to deprive the prosecutor wholly of the pistol, the offence is robbery, although the assailants on snatching the pistol, may also have intended to prevent its being used against them. Both intents may have existed at the time. The jury may infer the felonious intent from the immediate asportation and conversion of the property, in the absence of satisfactory countervailing evidence by the prisoner. The whole question is one peculiarly for their consideration, to be determined upon all the facts and circumstances.
This view renders it unnecessary to notice particularly the instruction asked for by prisoner’s counsel. It may not be amiss, however, to say it is liable to one grave objection. It affirms that the goods must have been taken with the felonious purpose existing at the time to appropriate them to the use of the taker. This is a misapprehension ; it is not essential that the person taking shall intend to appropriate the same to his own use. It is sufficient that his purpose is to deprive the owner wholly of them. Eor although a taking lucri causa is larceny, a taking in order to deprive the owner of his property is equally so. 2 Arch. *391. This principle of law, though sometimes not adverted to in the cases, is well understood and sustained by the authorities.
The third ground of error ought regularly to have been the first considered. We have, however, deemed it best to follow the order adopted by the counsel, and to notice the various assignments of error as they are presented. By the third and last it is insisted that the Hustings court of Richmond, as at present organized, has no jurisdiction to try offences committed outside of the corporate limits and within one mile of those limits. It is conceded that this jurisdiction existed down to the period of the adoption of the present constitution. It was first conferred by an act to amend an ordinance of the city passed in 1803; reaffirmed by the act of 1841-’2; and continued in the revisal of 1860. It has existed for more than fifty years, and has been always regarded as an important and beneficial jurisdiction. If under the new arrangement it has been taken away, it has been done by implication, and without being so intended.
In Chahoon’s case, 21 Gratt. 822, this court held that the courts provided by the fourteenth section of the sixth article of the constitution (of which the Hustings court is one) are continuations and successions of the Corporation courts then in existence, invested with the same jurisdiction and powers, subject to such modifications and changes as were made by the constitution, or might be made by acts thereafter passed. One of these changes is that the Hustings court has been deprived of the greater part of its civil jurisdiction. Another is that it has been clothed with exclusive, original jurisdiction in criminal matters, within the city of Richmond, with the exception of proceedings against convicts in the penitentiary.
*The acts of 1803 and 1842, conferring upon the court criminal jurisdiction outside of the city limits to the distance of one mile, has never been repealed, and must be held to be still in force. Whether the jurisdiction in civil matter over the same territory still remains or has been distributed among other courts, is a question we are not called upon to decide. It is sufficient that the power of the court in criminal cases still exists unaffected by any modifications or changes resulting from the constitution or from statutory enactment.
From what has been stated, it will be perceived the onlj1- error committed by the Hustings court was in giving the instruction already considered. For that error the judgment must be reversed, the verdict set aside, and the case remanded, to be proceeded with in conformity with the views here expressed.
Judgment reversed.
RES GESTA-,
I, Definition.
XT. Tie Actual Transaction.
III. Verbal Acts.
IV. Spontaneous Declarations.
V. Acts before or after the Transaction in Question.
VI. Declarations before or after the Transaction in Question.
*628 I.DEFINITION.
It is a great mistake to suppose the res gestee, in the legal sense, is, in case of murder, confined to the fact of thrusting the knife into the body, and therefore depriving of life. The res gestee is the murder, and the murder is made up of the homicide, and the intent with which it was committed. Actions, therefore, which seem to demonstrate the aúo animo are a part of the res gestee, and words which are a part of these actions are admissible. State v. Abbott, 8 W. Va. 741.
II.THE ACTUAL TRANSACTION.
Conduct of prisoner. — On indictment for larceny the commonwealth may prove the presence of the prisoner in the hotel on the night in question, and his acts and conduct therein; not for the purpose of establishing another distinct felony, but as a part of the whole transaction. Burr v. Com., 4 Gratt. 534.
Instruments of Crime. — The carrying of burglar’s nippers by the prisoner and his possession at the time of the crime of a pistol of calibre corresponding to the bullet found in the body of deceased is part of the res gestee, Williams v. Com., 85 Va. 613, 8 S. E. Rep. 470.
Insult — Cause of Homicide. — A gross insult offered to defendant is admissible in evidence as part of the res gestee on his trial for an assault committed the day after such insult. Itwas the immediate accompaniment of the act, such immediateness being tested not by closeness of time but by casual relation. Ward v. White, 86 Va. 212, 9 S. E. Rep. 1021; Davis v. Franke, 33 Gratt. 416.
Letters — Casual Relation. — On indictment for the murder of a girl in Richmond a letter written to her by the prisoner is admissible in evidence to show her reason for going to that place. Such letter is part of the res gestee or of'those acts — verbal or written or done — which stand in "casual relation" to the crime. The declarations “characterized her act of going” and was one of its “immediate accompaniments,” such immediateness being tested not by closeness of time, but by casual relation. Cluverius v. Com., 81 Va. 806.
Declarations of Agent — Dum Opus Fervet. — Where the acts of the agent will bind the principal, there, his representations, declarations, and admissions, respecting the subject-matter, will-also bind him, if made at the same time, and constituting part of the res gestee-, but his declaration not made dum omsfer. vet, but at another time and at a different place are not part of the res gestee and have no binding force on the principal. Coyle v. B. & O. R. Co., 11 W. Va. 94-108; B. & O. R. Co. v. Christie, 5 W. Va. 325.
When two parties are interested in a contract on one side the declarations of one, who was practically the agent of the other, made dwing the negotiations though in the absence of the other are admissible in evidence against that other as part of the res gestee. Steptoe v. Pollard, 30 Gratt. 689-704.
Statement of Deceased. — On indictment for homicide evidence is admissible to show deceased said she was going to a certain place near whiph her body was found. Such evidence is part of the res gestee. Tilley v. Com., 89 Va. 153, 15 S. E. Rep. 526.
III.VERBAL ACTS.
Declarations as parts of the res gestae, made at the time of the transaction, are regarded as verbal acts indicating a present purpose and intention, and are, therefore, admitted in proof like any other material fact to be weighed by the jury for what they are | worth. Beckwith v. Mollohan, 2 W. Va. 477; Corder v. Talbott, 14 W. Va. 277.
Declarations Accompanying Gifts Mortis Causa.— Declarations of one during his last illness accompanying a delivery of personal property are admissible in evidence as part of the res gestee to show the purpose of such gifts. Thomas v. Lewis, 89 Va. 57, 15 S. E. Rep. 389.
Declarations Accompanying Deed. — Evidence of parol declarations previous to the execution of a deed and at the moment of executing it are admissible to show the intention of such deed. Land, etc., v. Jeffries, etc., 5 Rand. 214-263. Hopkins, Brother & Co. v. Richardson, 9 Gratt. 485; Walthol v. Johnson, 2 Call 232 [275]; Jones v. Robertson, 2 Munf. 191.
The intention of the parties in the execution of a bond and deed of trust may be shown by the circumstances attending that transaction. Niday v. Harvey, 9 Gratt. 454-464.
The statements of the grantor in a deed which is in evidence, made at the time of its execution, are always admissible in evidence as part of the res gestee. State ex rel. Mundy v. Andrews, 39 W. Va. 35, 19 S. E. Rep. 385.
Declarations in Favor of Declarant. — The declarations of a party are not generally admissible as evidence in his own favor, but they are so admissible whenever they form part of thé res gestee. To come within the terms and operation of the rule, the declarations must accompany and explain the act done. Scott & Boyd v. Shelor, 28 Gratt. 891; Haynes v. Com., 28 Gratt. 943; State v. Abbott, 8 W. Va. 741.
Declarations of a party in his own favor, though a part of the res gestee, of a collateral fact introduced into the case merely to contradict a witness of the other side, but in no way otherwise connected with the material fact or enquiry involved in the issue, are not admissible. Corder v. Talbot, 14 W. Va. 277-290.
In Barley v. Byrd, 95 Va. 316, 28 S. E. Rep. 329, it was held that a memorandum of an attorney of James Wilson, through whom plaintiff claims, reciting a conveyance by deed to the said James Wilson is not admissible as a part of the res gestee to prove the execution of such deed; nor is it admissible as a declaration against interest.
IV. SPONTANEOUS DECLARATIONS.
When deceased was killed two persons ran rapidly away in the same direction: one said to the other in a jerky voice as they both ran by a by-stander, “Will, you have killed him.” This declaration is admissible as part of the res gestee. It was a circumstance which was closely connected with the crime; words said between the participants under the immediate spur of the transaction. Briggs v. Com., 82 Va. 562.
The cry of a woman » articulo mortis, of “Oh, I am bound to die, and I am not prepared, my husband put me in this fix; hold me down and let me die; tell everybody my husband did it” is admissible as part of the res gestee, as a dying declaration and as a charge made in his presence and not denied by him. Puryear v. Com., 83 Va. 51, 1 S. E. Rep. 512.
In Hill v. Com., 2 Gratt. 594-605, it was said, “All that is necessary, according to these cases, to make the declaration part of the res gestee, is that it should be made recently after receiving the injury, and before he had time to make up a story." In this case a declaration that “Hunter Hill asked me to walkout and stabbed me here,” made five or ten *629 minutes after the act, was held admissible as part of the res gestee. Some of the judges considered the declaration not a part of the res gestee lint admissible as a dying declaration.
On indictment for felonious stabbing, a cry of "Charles Crookham has stabbed me" is admissible in evidence against the accused as part of a res gestee. Crookham v. State, 5 W. Va. 510; Kirby v. Com., 77 Va. 681.
On a trial for murder, statements made by the prisoner a few minutes after the homicide near the place thereof and in the presence of witnesses to the homicide who were not called by the commonwealth, should have been heard by the court in order to determine if they were admissible. Little v. Com., 25 Gratt. 921.
Whenever the bodily or mental feelings of the individual are material to be proved, the usual expressions of such feelings, made at the time in question, may be given in evidence. And whether they were real or feigned is for the jury to determine. Livingston v. Com., 14 Gratt. 592.
V. ACTS BEFORE OR AFTER THE TRANSACTION IN QUESTION.
Facts which constitute the res gestee, must be such as are so connected with the very transaction or fact under investigation as to constitute part of it. A quarrel of prisoner with K was held inadmissible as part of the res gestee for the purpose of showing motive on his part in the alleged shooting of P. Joyce v. Com., 78 Va. 287.
On trial of a woman for homicide, evidence that deceased had two months before made an assault upon her with intent to commit rape, is not admissible as part of the res gestee. Hodges v. Com., 89 Va. 265, 15 S. E. Rep. 518.
VI. DECLARATIONS BEFORE OR AFTER THE TRANSACTION IN QUESTION.
Conspiracy. — Though a previous conspiracy has been proved, statements of a conspirator made after the commission of the offence and after the object of the conspiracy had been accomplished are inadmissible in evidence against a co-conspirator. Oliver v. Com., 77 Va. 590; Hunter v. Com., 7 Gratt. 641; Jones v. Com., 31 Gratt. 836, and note; Danville Bank v. Waddill, 31 Gratt. 469, and note.
Narration. — A statement of a prosecutor after the alleged crime, that he was robbed is not admissible as part of the res gestee. The court says: “It would be dangerous, to the last degree, to permit a party making a criminal charge against another to support his own evidence by proof of declarations mane by him subsequent to the alleged crime.” Haynes v. Com., 28 Gratt. 942; Jones v. Com., 86 Va. 743-744. 10 S. E. Rep. 1004.
The description of,the prisoner, given by the prosecutor's wife, who was an eyewitness of the offence, such description being made soon after the crime is admissible as part of the res gestae. Jordan v. Com., 25 Gratt. 943.
Declarations as to the execution of a deed made before there was any treaty or negotiation in relation to the subj ect-matter conveyed are not admissible to impeach the deed. Nor can declarations of one who is a mere agent to procure a deed bind the grantor, if such declarations are made after the execution thereof. He is in such a case funetns officio. Smith v. Betty, 11 Gratt. 752.
Statements of a brakeman as to the condition of the train and the roadbed, made sometime before the accident and some miles from the place thereof are not admissible as part of the res gestee. Nor are such statements made sometime after the accident admissible. Va. & Tenn. R. Co. v. Sayers, 26 Gratt. 328; Hawker v. B. & O. R. Co., 15 W. Va. 628; Norfolk & C. R. Co. v. Suffolk Lumber Co., 92 Va. 413-444, 23 S. E. Rep. 737.
In an action for libel the admissions of the general manager of the defendant corporation are not admissible as part of the res gestee to show the purpose of the publication, such declarations being made several weeks after the letter complained of was written. Reusch v. Roanoke, etc., Co., 91 Va. 537, 22 S. E. Rep. 358.
The declarations of the conductor made shortly after an accident, as to where he was when the accident occurred are neither admissible as part of the res gestee or as admissions. Jammison v. C. & O. Ry. Co., 92 Va. 327, 23 S. E. Rep. 758.