## FRIGORIFICO WILSON DE LA ARGENTINA v. WEIRTON STEEL CO.
### No. 371.

District Court, N. D. West Virginia.
April 11, 1936.

P. D. Morris and Erskine, Palmer & Curl, all of Wheeling, W. Va., for plaintiff.

McCamic & Clarke, of Wheeling, W. Va., for defendant.

BAKER, District Judge.

This is a demurrer to the Third Amended Declaration in an action of trespass on the case. The praecipe was filed and this suit begun on August 9, 1926. According to the allegations of the pleadings the plaintiff is a South American corporation which was engaged during the years 1917, 1918 and 1919 in the business of packing meat and meat food products in Buenos Aires, Argentina. The plaintiff was a subsidiary company of Wilson and Company, Inc., of Chicago, Ill. The defendant is the successor to a company known as the Phillips Sheet & Tin Plate Company, which latter company was in 1917, 1918 and 1919 engaged in the manufacture of tin plate in Weirton, West Virginia.

On November 14, 1917, a contract was entered into between the Phillips Sheet & Tin Plate Company and Wilson & Company. This contract was in writing and was as follows:

"Form–CO 92 300 9–17
"Phillips Sheet and Tin Plate Company
"Weirton, W. Va.
"Date November 14, 1917.
"Contract No. 2526
"The Phillips Sheet & Tin Plate Company of Weirton, West Va. agrees to sell

and Wilson & Company, Chicago, Illinois, & its subsidiaries agrees to buy

"Quantity and Description:

"50,000 base boxes Prime Coke Tin Plate with Wasters included

"Shipments:

"During the year 1918 or as soon after receipt of specifications as manufacturing conditions will permit.

"Specifications:

"Specifications shall be furnished by buyer for shipment in approximately equal monthly quantities, each month's quota to be a separate and independent contract, and all goods to which buyer is entitled under each contract must be specified for at least 45 days prior to the first of that month. Buyer's failure to furnish specifications as aforesaid may, at seller's option, without notice to buyer, be treated and considered as a waiver on the part of the buyer of all right to demand any subsequent delivery of the unspecified portion of the goods contracted.

"Freight:

"Pittsburgh basis rate of freight to apply. Should there be a change in freight rate during the life of this contract, price (or prices) to be revised correspondingly.

"Prices:

"Price on 25,000 base boxes for the first half to be: $7.75 for 14 x 20 – 100# – 112 sheets Primes, fob Seller's Mill.

"Price on 25,000 base boxes for the second half to be fixed by seller at a later period.

"Remarks:

"Deliveries are subject to acts and .demands of the Government in times of war or national emergency.

"Terms:

"Payable in 30 days from date of invoice, or less 2 per cent, for cash if remitted within 10 days; with exchange on New York or Pittsburgh.

If buyer fails to make any payment according to the terms of this contract with seller, the seller shall be under no obligations to make further shipments, and may, at his election at any time, cancel all or any part of buyer's unfilled or *im*complete contracts with seller, and proceed for the collection of the amount unpaid on shipments theretofore made. And in case of failure of buyer to pay any amount due seller, seller shall have a lien upon any goods of buyer in seller's possession, to secure payment thereof. The title to goods delivered under this Contract, as well as any other goods delivered during the term of this contract, to remain in the seller until it shall have received the money for same, and upon failure to make such payment the seller may repossess itself and take away such goods. Shipments and deliveries under this agreement shall at times be subject to the approval of the seller's Credit Department and in case the seller shall have any doubt as to the buyer's responsibility the seller may decline to make any further shipments hereunder, except upon receipt of satisfactory security, or for cash before shipment.

"Contingencies:

"Seller is not to be accountable for delays in shipment or delivery if caused by strikes, floods, fires, accidents to machinery, wars, car shortages, delays in transportation, or other contingencies beyond seller's control.

"Claims:

"Claims for errors, shortages, imperfections, deficiencies, etc. will not be entertained by seller unless made within thirty days after receipt of goods, and seller shall not in any event be liable for labor charges or consequential damages arising from the use of defective material. In case any shipment of material proves unsuitable, it is understood that the buyer will immediately discontinue its use and advise the seller of the facts, that the seller may have the opportunity of deciding what shall be done in the circumstances, so that possible loss or damage to either party shall be prevented or minimized.

"Tax:

"Any imposition of duty or tax on pig tin, or other raw materials imported from other nations that enter into the manufacture of the material hereunder, shall be for buyer's account.

"Resale:

"It is understood and agreed to by buyers that all material covered by this contract is for their own consumption and no resale of same will be made.

It is understood by the buyer that this contract is not transferable.

"Special:

"This contract is made subject to governmental regulations and restrictions (foreign or domestic) on articles and labor entering into the manufacture of products mentioned herein.

"Approval:

"To render this contract binding upon seller it must be signed by an officer of the seller's company and its acceptance by any salesman or agent, is subject to such approval.

"Accepted: Phillips Sheet and Tin Plate Company,
"(Signed) J. J. Watson
General Manager of Sales.
"Accepted: Wilson & Co. Inc.
"(Signed) M. Money"

A demurrer was sustained to the Declaration, whereupon the Amended Declaration was filed. A demurrer was sustained to the Amended Declaration, whereupon the Second Amended Declaration was filed. None of these first three declarations set out the contract of November 14, 1917, in words and figures. However, at the argument on the demurrer to the Second Amended Declaration, a stipulation was filed, signed by counsel for both parties, which was as follows:

"At the argument of this matter upon demurrer to the second amended declaration herein and to each count thereof, counsel for the plaintiff stated that the entire contract had not been pleaded, and thereupon at the request of the Court the contract was produced; it was then stipulated by counsel for plaintiff that the purchases for which plaintiff sues herein were all made under the contract of November 14, 1917, identified as contract 2526, which is the contract aforesaid so exhibited in open court and now filed herewith marked Exhibit A to stipulation; and it was thereupon agreed by counsel for the parties and consented to by the Court that the same should be treated and taken as a part of each count of the declaration as though pleaded at length therein, and without any formal amendments to the declaration, and the demurrer heard on the declaration as so enlarged.
"(Signed) J. J. P. O'Brien
"P. D. Morris,
"Counsel for plaintiff.
"McCamic & Clarke,
"Counsel for defendant."

The demurrer to the Second Amended Declaration was then sustained, an appeal was taken to the Circuit Court of Appeals for the Fourth Circuit, and the action of this court affirmed. See 62 F.2d 677, 680. The case was remanded to this Court for further orders in accordance with the opinion of the Circuit Court of Appeals, and the Third Amended Declaration, the one now under consideration, was filed. This declaration consists of seven counts, and the various counts will be considered separately.

Count One sets out in full the contract of November 14, 1917. There is no allegation whatever that the claim for imperfections and deficiencies was made within 30 days after the receipt of the goods. It does not allege when the goods were received or when the claim for imperfections was made. In the opinion by the Circuit Court of Appeals, Judge Soper, speaking for the court, said: "In another respect, however, we think that the declaration is defective. It fails to show, as required by the paragraph on claims quoted above, that the buyer, when the material proved unsuitable for use, immediately discontinued the manufacture of the cans and advised the seller of the facts so that the seller might have the opportunity to decide what should be done in the circumstances to prevent or minimize possible loss or damage. There is nothing in the pleading to excuse the nonperformance of this obligation. Williston on Sales, § 611a, refers to the rule applicable in such cases, as follows: 'Conditions are often imposed in contracts qualifying the buyer's remedies for breach of warranty, and such conditions are especially common where a right of rescission is stipulated for. If such conditions are imposed, of course, in order to entitle the buyer to the stipulated remedy, they must be observed. As for instance, that notice of defects shall be given to the seller and perhaps also that he shall have an opportunity to rectify them.'"

While the present declaration does allege that the buyer immediately discontinued the manufacture of cans upon discovery of the imperfections, it does not allege that the seller was notified concerning these imperfections within 30 days of the receipt of the goods. It does not allege when the goods were received, or when notice of the alleged imperfections was given. It is obvious from the opinion of the Circuit Court of Appeals that a declaration in this case to be good, must show compliance with the paragraph on "Claims" in the contract. For the failure in this respect, I feel Count One is bad, and the demurrer thereto should be sustained.

Count Two merely alleges a contract to purchase and sell, and does not allege that this contract was in writing. It does, however, specifically allege the date

of said contract, and it is apparent upon the face of the count, that unless the contract were in writing, it would be barred by the statute of limitations at the time the suit was instituted. This being apparent upon the face of the pleadings, the pleadings must allege a written contract, and failure to do so makes this count bad upon demurrer.

As to Count Three, the demurrer should be sustained for the same reasons set forth as to Count One.

 Counts Four, Five and Six may be considered together for the purpose of this demurrer. These counts allege that a written contract was entered into and this allegation saves them from the defect mentioned as to Count Two. They do not, however, set out the terms of the contract, and there is nothing in these counts, if viewed alone, to indicate just what those terms were. As a general rule it is well settled that in testing the demurrability of a count in a declaration, the allegations of that count alone are considered. In this, however, a peculiar circumstance exists, that is, the fact that the parties stipulated on the record in this case that "the purchases for which plaintiff sues herein were all made under the contract of November 14, 1917, identified as 'contract 2526' ". Under this stipulation, the Court has before it on the record in this case the fact that the contract sued upon in Counts Four, Five and Six in fact, contain the terms set forth heretofore. Counsel would seem to argue, however, that this Court in considering a demurrer to these certain counts should close its eyes to the terms of that contract and should erase all memory thereof from its mind.

The rule that each count was considered separately was not an iron-clad one, and there were many instances under common law pleading in which Courts looked outside of a particular count, and even outside of the declaration, in passing upon a demurrer to such declaration. This course of action was approved in the case of Beckwith v. Mollohan, 2 W.Va. 477. A familiar instance in which courts went outside the entire declaration in passing upon demurrers, was the old common law practice of craving oyer of a sealed instrument which had been sued upon. After the instrument was brought into the record by oyer, the court would then consider it and the declaration to determine whether or not there was a variance between the two in passing on demurrers.

Were it not for the prior stipulation in this case, counsel might well argue that they alleged a written contract in Counts One and Three, and set forth the terms thereof, but then sued upon a different written contract in Counts Four, Five and Six. In this respect, however, their stipulation estops them from making such claim. This Court will, therefore, construe Counts Four, Five and Six in the light of the terms of the contract set forth in the stipulation, and having so construed them, will sustain demurrers thereto for the same reasons assigned under Count One.

 Count Seven presents still another question. In this count the pleader incorporates paragraphs 1, 2, 3 and 4 of the First Count by reference. These paragraphs merely identify the parties to the suit and assert the ground for Federal jurisdiction. The Seventh Count then proceeds to go on with the common law count for money due and received and for money found to be due on account. It is true that it has been often stated that a demurrer to the common counts in assumpsit will be overruled. The law as usually laid down was as stated by Judge Burks. "Whether a written agreement can be introduced to sustain a recovery under the common counts must be determined when the evidence is offered. The question cannot be raised by a demurrer to said counts." See Burks Pleading and Practice, 2nd. Ed., page 114. But here again we are confronted with the proposition that this Court knows from the record that if the plaintiff in this case is to recover at all, it must be under the terms of the written contract. That being the case, it would seem foolish and futile to put the defendant to trial upon the common counts, unless the plaintiff is in a position to prove compliance with the terms of the contract as written. Under the law of this case, as laid down by the Circuit Court of Appeals, the plaintiff cannot recover any judgment herein without proving compliance with the terms of the written contract, and especially with the paragraph thereof under the heading "Claims". If compliance with these terms can be proven, they can easily be alleged, and in spite of the common counts, I feel that a demurrer to this last count must be sustained.

For this reason, I am constrained to sustain the demurrer herein to the entire dec-