Jones MORRISON, et al *v.* Larone
LOWE and Floy Edelle LOWE

79-103                                    590 S.W. 2d 299

Opinion delivered December 17, 1979
(In Banc)

362

*Charles S. Gibson,* for appellants.

*Honey & Rodgers,* by: *Danny P. Rodgers,* for appellees.

GEORGE ROSE SMITH, Justice. The appellants, Jones Morrison and his two sons, and the appellees, Larone Lowe and his wife Floy, were neighbors in a rural area, living about a quarter of a mile apart. The Lowes had bought their property from another member of the Morrison family, with an access right-of-way across the Jones Morrison land. At first the relationship between the neighbors was good. Eventually, however, the two families became enemies and finally had a shotgun and rifle shoot-out near the Lowes' house. The Morrisons' gunfire seriously injured Larone Lowe's hands.

The Lowes brought this suit for the personal injuries, Mrs. Lowe's loss of consortium, and punitive damages. This appeal is from a verdict and judgment in their favor. A new trial must be ordered, because of erroneous rulings allowing the plaintiffs to introduce inadmissible and prejudicial testimony.

The principal errors arose from violations of the hearsay rule, which apparently was not clearly understood in the trial court. Rule 801 of the Uniform Rules of Evidence (Ark. Stat. Ann. § 28-1001 [Repl. 1979]) defines hearsay, but the definition does not make any substantial change in the traditional idea about what constitutes hearsay. It is still not permissible for a witness to relate information he obtained from someone else rather than by his own observation. Counsel cannot

avoid the rule, as was attempted repeatedly in the court below, by asking a witness for the substance of an out-of-court statement by someone else rather than for an exact quotation. *Robinson* v. *State,* 255 Ark. 485, 500 S.W. 2d 929 (1973). As we said there: "The prohibition against hearsay would cease to exist if it could be so easily circumvented."

The plaintiffs, at the beginning of their proof, sought to show how the relations between the two families had deteriorated, but the court allowed that proof to include much hearsay. It would have been permissible, for example, for the plaintiffs to testify that they had been told of threats made against their lives by the defendants. *See Lee* v. *State,* 72 Ark. 436, 81 S.W. 385 (1904); McCormick, Evidence, § 249 (2d ed., 1972). Such testimony, although hearsay if offered to prove that the threats had in truth been made by the Morrisons, would nevertheless be admissible, with a proper limiting instruction to the jury, to show that the plaintiffs had reason to be afraid of the defendants and acted in self-defense in the shoot-out that took place.

The plaintiffs, however, were allowed by the trial court to expand the permissible purpose of such preliminary proof to include out-and-out hearsay. We mention three instances of this kind.

First: Mrs. Lowe was allowed to testify that when the telephone company refused to run a line to the Lowes' house, she checked with the company and found that Jones Morrison had protested because he wanted to improve the road before the line was laid. In response to the defendants' objection counsel for the plaintiffs stated: "Judge, she did not testify to a conversation. She testified from looking into the matter at the phone company and reports that she received." The court overruled the objection. That ruling was wrong. The witness's entire statement was outright hearsay, no danger to the Lowes being involved. We do not imply that a telephone employee could not have testified that Jones Morrison objected; we merely hold that Mrs. Lowe could not testify that such an employee told her that Morrison objected.

Second: Mrs. Lowe was allowed to testify that the Lowes' hired hand, Robert Huckaby, told her that he (not the Lowes) had been threatened by the Morrisons. One of the plaintiffs' lawyers argued, in replying to opposing counsel's objection: "But that's not hearsay, Judge. That is not a conversation. It is the report of an event." The witness's testimony was undoubtedly hearsay, merely summarizing what Huckaby had told her. (We are aware that this particular error may have become harmless in view of Huckaby's later testimony to the same effect, but the incident still typifies the errors that occurred.)

Third: Mrs. Lowe was allowed to testify about what Officer Gavin, deceased, had told her as information he had gained by interrogation. When an objection was made, plaintiffs' counsel restated his argument: "He reported it back to her. That makes it an investigation." Again the testimony, merely a narrative of facts reported by the officer, was unquestionably inadmissible under the hearsay rule. We need not enumerate other instances. The record is replete with hearsay testimony that was erroneously admitted, over objection.

A somewhat different error occurred when Jones Morrison was required to admit, on cross examination, that he had been charged with a crime as a result of the shooting. Counsel for the Lowes readily concede in their brief that such cross examination is ordinarily not allowed. *Moore v. State*, 256 Ark. 385, 507 S.W. 2d 711 (1974). It is argued, however, that the inquiry was permissible as showing a possible motive for a supposedly fraudulent conveyance made by Morrison, to avoid the claims of creditors. In the first place, Morrison's motive would have been to avoid civil liability, not to escape punishment for a crime. And second, the connection between the conveyance (which may have been in good faith) and Morrison's possible civil liability had such a remote bearing upon the witness's credibility that the court should have disallowed cross examination about the specific act, in the exercise of its discretion under Rules 403 and 608 (b) of the Uniform Rules. The error was presumably prejudicial, suggesting to the petit jury that a grand jury or prosecutor thought Morrison to be criminally responsible for the shooting.

The Morrisons also argue that the court erred in submitting to the jury a form of verdict allowing a finding only against all three defendants, not against one or more of them. The plaintiffs alleged that the father and sons were on a common mission in going to the Lowes' premises, each armed with a gun, and the evidence was all to that effect. In fact, each appellant separately testified that they went together and carried guns not only to use in their search for some hogs that had strayed but also to protect themselves against threats made by the Lowes. On the evidence presented we perceive no sound basis for the jury to differentiate among the Morrisons as to possible liability. Of course a contrary ruling may be called for if the proof is materially different upon a retrial.

Reversed.

HARRIS, C.J., & BYRD, J., not participating.