461 S.E.2d 75

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Craig G. PHILLIPS, Defendant Below, Appellant.**

No. 22633.

Supreme Court of Appeals of West Virginia.

Submitted May 9, 1995.

Decided July 11, 1995.

Dissenting Opinion of Justice Workman July 21, 1995.

---

rors on appeal, including the trial court admission of hearsay and uncharged misconduct, and its refusal to strike two jurors for cause.[1] For reasons discussed below, the conviction is reversed and the case is remanded.

## I.

## FACTS AND BACKGROUND INFORMATION

On the morning of April 29, 1991, Mr. Phillips shot his wife, Cynthia Phillips, in their home. There were no witnesses to the shooting. On the day of the shooting, the defendant maintains his gun jammed while he was turkey hunting early in the morning and he returned home. When the defendant arrived home, he brought the gun with him into the living room in order to ascertain the cause of the jamming. He told his wife the gun was malfunctioning and she suggested they return the gun and have it repaired.

While attempting to remove the shotgun shells, the defendant received a telephone call from his mother. At that time, Cynthia Phillips was resting on the sofa. The defendant claimed he became entangled in the telephone cord while attempting to eject the shotgun shells and talk on the telephone. As he stood up, cradling the receiver between his neck and shoulder, the shotgun accidentally discharged and fatally injured his wife. The defendant maintained he told his mother to call 911, hung up the phone, called 911 himself, exited the house in a panic, and yelled to a neighbor to call 911.

In contrast, the State produced evidence that Cynthia Phillips was not lying on the sofa at the time of the shooting. The State asserted that Mrs. Phillips was standing next to the sofa and the defendant moved her body to the sofa when she collapsed after being shot. Although there was no blood on the defendant when the emergency squad arrived, the clothes he wore hunting were never recovered.

G.W. Morris, II, Pros. Atty. for Barbour County, Philippi, for appellee.

Daniel R. James, Barr & James, Keyser, for appellant.

CLECKLEY, Justice:

The appellant and defendant below, Craig G. Phillips, appeals his conviction following a jury verdict in the Circuit Court of Barbour County of second degree murder for shooting his wife. The defendant assigns several er-

---

1. The defendant also asserts that his conviction should be reversed due to: (1) prosecutorial misconduct; (2) erroneous jury instructions; (3) insufficiency of the evidence; (4) cumulative error; and (5) a purported discovery violation. We find there is either no support in the record for these errors or they are without merit.

The State's theory was that the couple had marital problems due mainly to the defendant's extramarital affairs. The State contended that Cynthia Phillips found out about her husband's most recent affair and was determined to get proof of his infidelity. The State argued that, when he returned from his hunting expedition, Cynthia Phillips confronted her husband, told him she intended to divorce him, and she would seek half of their substantial assets in the divorce proceeding. The defendant then fatally shot his wife during this heated confrontation.

The original investigation by the local police into the death of Cynthia Phillips resulted in a finding that the incident was an accident. The prosecutor and the State police conducted a separate investigation prompted by inconsistent statements about the shooting and, subsequently, the defendant was indicted for murder. The trial concluded with the jury returning a verdict of second degree murder against the defendant. The defendant appeals.

## II.

## DISCUSSION

The defendant appeals his conviction on several grounds. We limit our consideration of the assigned errors to two: (1) whether the trial court committed reversible error by permitting the multiple use of hearsay evidence, and (2) whether the defendant was wrongfully deprived of two of his statutory peremptory challenges.

### A.

#### Hearsay Evidence

In his first assignment of error, the defendant contends the trial court erred by permitting the prosecution to elicit prejudicial hearsay testimony from various witnesses. Prosecution witnesses testified that the victim told them the defendant had numerous extramarital affairs; that she knew about his most recent girlfriend; and that she planned to divorce the defendant and take half of the marital assets if she discovered concrete evidence of his infidelity. Several witnesses also testified that the defendant was having a longstanding affair at the time of the shooting.

At the pretrial and *in camera* hearings, the prosecution argued that the proffered testimony fit within numerous hearsay exceptions and should be admitted at trial. The defendant objected to this evidence based on relevancy and the prejudicial effect of the hearsay testimony. However, the trial court admitted most of the contested testimony on the basis of present sense impression under Rule 803(1) of the West Virginia Rules of Evidence and then existing mental, emotional, or physical condition under Rule 803(3) of the Rules of Evidence.[2]

Hearsay "is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." W.Va. R.Evid. 801(c). As we have previously stated in Syllabus Point 2 of *State v. Dillon*, 191 W.Va. 648, 447 S.E.2d 583 (1994):

" 'Generally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the

2. Rule 803 reads, in pertinent part:
"**Hearsay Exceptions: Availability of Declarant Immaterial.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
"(1) *Present Sense Impression.*—A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.
\* \* \* \* \* \*
"(3) *Then Existing Mental, Emotional, or Physical Condition.*—A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will."

statement is hearsay but falls within an exception provided for in the rules.' Syl. Pt. 1, *State v. Maynard,* 183 W.Va. 1, 393 S.E.2d 221 (1990)."

■■■ "Hearsay is presumptively untrustworthy because the out-of-court declarant cannot be cross-examined immediately as to any inaccuracy or ambiguity in his or her statement." Glen Weissenberger, *Hearsay Puzzles: An Essay on Federal Evidence Rule 803(3),* 64 Temple L.Rev. 145 (1991). In criminal trials, hearsay evidence directly conflicts with the constitutional guarantees embodied in the Confrontation Clause of the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution. Recently, in Syllabus Point 1 of *State v. Mason,* 194 W.Va. 221, 460 S.E.2d 36 (1995), this Court explained the "mission" of the Confrontation Clause:

> "The mission of the Confrontation Clause found in the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution is to advance a practical concern for the accuracy of the truth-determining process in criminal trials, and the touchstone is whether there has been a satisfactory basis for evaluating the truth of the prior statement. An essential purpose of the Confrontation Clause is to ensure an opportunity for cross-examination. In exercising this right, an accused may cross-examine a witness to reveal possible biases, prejudices, or motives."

Despite these concerns, both this Court and the United States Supreme Court have found the inherent untrustworthiness of such statements is eliminated if the evidence fits within a firmly grounded hearsay exception. *See Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *State v. Wood,* 180 Ariz. 53, 881 P.2d 1158 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2588, 132 L.Ed.2d 836 (1995); *State v. James Edward S.,* 184 W.Va. 408, 400 S.E.2d 843 (1990).

This Court has also found in Syllabus Point 6 of *State v. Mason, supra:*

> "For purposes of the Confrontation Clause found in the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution, no independent inquiry into reliability is required when the evidence falls within a firmly rooted hearsay exception."

However, we recognize that "exceptions cannot permit the admission of hearsay that is less trustworthy than the minimum necessary to satisfy the confrontation requirements." Stanley A. Goldman, *Not So "Firmly Rooted": Exceptions to the Confrontation Clause,* 66 N.C. L.Rev. 1, 5 (1987).

■■■ Besides trustworthiness, of equal concern is the relevancy of hearsay evidence. Rule 403 of the West Virginia Rules of Evidence provides for the exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.[3] There is no provision excusing hearsay evidence from meeting the basic requirement of relevancy for admission. In *State v. Satterfield,* 193 W.Va. 503, 512, 457 S.E.2d 440, 449 (1995), this Court stated that even if a trial court finds an extrajudicial statement is admissible under our hearsay rules,

> "[t]he trial judge must additionally analyze whether the ... [statement] is relevant pursuant to *W.Va.R.Evid.* 401 and, if so, thereby admissible pursuant to *W.Va. R.Evid.* 402. However, if the probative value of the evidence 'is substantially outweighed by the danger of unfair prejudice, then, although relevant, the evidence may be excluded pursuant to *W.Va.R.Evid.* 403."

The statements at issue in the present case were admitted by the trial court as exceptions to the hearsay rule under Rule 803(1) (present sense impression) and Rule 803(3) (then existing mental, physical, or emotional condition). We will discuss each of these exceptions in turn.

---

**3.** Rule 403 of the Rules of Evidence provides: "**Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

## 1. Present Sense Impression

The present sense impression exception[4] is an outgrowth of the common law *res gestae* (a Latin phrase meaning "things done") exception and a cousin to the excited utterance exception embodied in Rule 803(2) of the Rules of Evidence.[5] *See* T.P. Hardman, *Spontaneous Exclamations v. Res Gestae*, 25 W. Va. L.Q. 341 (1918). The *res gestae* exception was an umbrella exception that permitted trial courts to admit assorted spontaneous extrajudicial statements if there was contemporaneity between the act established and the declarations, "precluding the reflection that gives rise to falsehood." *Reynolds v. W.T. Grant Co.*, 117 W.Va. 615, 620, 186 S.E. 603, 605 (1936); *State v. Coram*, 116 W.Va. 492, 182 S.E. 83 (1935); *Thompson v. Updegraff*, 3 W.Va. 629 (1869); *Beckwith v. Mollohan*, 2 W.Va. 477 (1868).

Many jurisdictions, including this State, have codified a part of the *res gestae* exception by adopting verbatim the present sense impression found in the Federal Rules of Evidence.[6] However, most states have failed to discuss the appropriate standards for this exception. Instead of grappling with the intricacies of the exception, frequently courts have so interwoven the definition of present sense impression with that of the excited utterance exception that the two exceptions are virtually synonymous and indistinct. *See United States v. Narciso*, 446 F.Supp. 252, 286 (E.D.Mich. S.D.1977) ("[t]raditionally, the distinction between an 'excited utterance' and a 'present sense impression' has not been as precise as the authors of the Federal Rules of Evidence have made it"); *State v.*

*Maestas*, 92 N.M. 135, 584 P.2d 182 (1978) (statements made at hospital to her mother by victim of severe beating were admissible under Rules 803(1) and 803(2)). However, as we discuss below, we recognize there will be situations where both exceptions may not be equally applicable.

Under Rule 803(1), the present sense impression is defined as "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." As any exception under Rule 803, proof of the unavailability of the declarant is not a prerequisite for admission. The rationale for this exception is that "substantial 'contemporaneity' of event and statement negates the possibility of conscious misrepresentation." 2 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 8-3(B)(1) at 194 (1994).

If the present sense impression statement is made " 'under stress of excitement from the event or condition that it describes or explains, then it overlaps' " with the excited utterance exception. *Booth v. State*, 306 Md. 313, 323, 508 A.2d 976, 980 (1986). (Citation omitted). Confusion between the present sense impression and the excited utterance exception arises because the average person is "more likely to remark upon unusual and exciting events rather than those of ordinary character," but both exceptions could apply for statements arising from exciting events.[7] 2 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 8-3(B)(1) at 196.

---

**4.** See note 2, *supra*, for the text of Rule 803(1). Although we have mentioned present sense impression in a few cases, we have never announced the appropriate standards applicable to trial courts.

**5.** Rule 803(2) reads, in part: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

**6.** *See* Jack B. Weinstein and Margaret A. Berger, *Weinstein's Evidence* ¶ 803(1)[02] at 803–95 and 803–97 (1994) (listing twenty-four states that have the identical exception). To be clear, however, neither the West Virginia Rules of Evidence nor the Federal Rules of Evidence expressly codi-

fy the old catch-all, *res gestae*. *See Miller v. Keating*, 754 F.2d 507 (3rd Cir.1985). If a statement previously referred to as *res gestae* is to be admissible, the declaration must qualify under one of the genuine exceptions or exemptions to the hearsay rule.

**7.** *See Booth v. State*, 306 Md. at 323, 508 A.2d at 981, *quoting* D. Binder, *Hearsay Handbook* 89 (2nd ed. 1983, 1985 Cum.Supp.) (example of when both exceptions may be applicable is "if a sportscaster is excited by the sporting event that he is watching, his play-by-play description qualifies both as a present sense impression and an excited utterance. If he is bored by it, his description qualifies only as a present sense impression").

Despite the possibility that Rule 803(1) can be used in exciting circumstances, clearly the definition of the present sense impression indicates the contested statement need not be the result of an exciting event. In fact, the key difference between the present sense impression exception and the excited utterance exception is that present sense impression requires contemporaneity while the central requirement of an excited utterance is that the declarant still be under the pressure of the exciting event. *See* 3 Stephen A. Saltzburg, Michael M. Martin, and Daniel J. Capra, *Federal Rules of Evidence Manual* 1390 (6th ed. 1994).[8]

We hold that it is within a trial court's discretion to admit an out-of-court statement under the present sense impression exception if: (1) The statement was made at the time or shortly after an event; (2) the statement describes the event; and (3) the event giving rise to the statement was within a declarant's personal knowledge. Additionally, it is appropriate for a trial court to weigh the corroboration of an event (or the absence thereof) by an independent witness in evaluating the trustworthiness of the statement.

We will first consider the necessity of the spontaneity of the statement. As indicated above, contemporaneity of a statement reduces the possibility of fabrication and memory lapses. Theoretically, the reliability of the statement increases as the length of time between the statement made and the event described decreases. However, we recognize that at times, " 'precise contemporaneity' " is not always possible, thus slight delays are permissible. *Booth v. State,* 306 Md. at 320, 508 A.2d at 979. (Citation omitted). The goal then is to determine whether "sufficient time elapsed to have permitted reflective thought." 2 John W. Strong, *McCormick on Evidence* § 271 at 214 (4th ed. 1992). Thus, a functional test for contemporaneity is to determine "whether the proximity in time is sufficient to reduce the hearsay dangers of faulty memory and insincerity." 2 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 8–3(B)(1) at 195. This Court cannot create a bright line time limit beyond which a statement would be deemed presumptively unreliable because this functional test is necessarily dependant on the individual facts of a case. Such a factual analysis is properly vested with a trial court, and we will not reverse absent an abuse of discretion.[9] However, there must be some evidence concerning the lapse of time or there is no foundation for the

**8.** Some view the absence of a startling event as lessening the trustworthiness of a statement that fits within the present sense impression exception. However, some commentators approve the present sense impression exception despite its shortcomings. In *Booth,* 306 Md. at 321–22, 508 A.2d at 980, *quoting McCormick on Evidence* § 298 at 860 (3rd ed. E. Cleary 1984), the Maryland Court of Appeals approved the exception:

" 'Although [present sense impression] statements lack whatever assurance of reliability there is in the effect of an exciting event, other factors offer safeguards. First, since the report concerns observations being made at the time of the statement it is safe from any error caused by a defect of the declarant's memory. Second, a requirement that the statement be made contemporaneously with the observation means that there will be little or no time for calculated misstatement. Third, the statement will usually have been made to a third person (the witness who subsequently testifies to it) who, being present at the time and scene of the observation, will probably have an opportunity to observe the situation himself and thus provide a check on the accuracy of the declarant's statement, i.e. furnish corroboration. More-

over, since the declarant himself will often be available for cross-examination his credibility will be subject to substantial verification before the trier of fact.' " (Footnotes omitted).
Other commentators, however, applaud the present sense impression exception because it does not rely on an exciting event. According to these theorists, the startling event itself may distort perception and result in an unreliable statement. *See* Robert M. Hutchins and Donald Slesinger, *Some Observations on the Law of Evidence,* 28 Colum. L.Rev. 432, 439 (1928).

**9.** For cases rejecting the use of Rule 803(1) for lack of contemporaneity, see *Hilyer v. Howat Concrete Co.,* 578 F.2d 422 (D.C.Cir.1978) (statements made between fifteen and forty-five minutes after the event did not qualify as present sense impression); *In Interest of C.B.,* 574 So.2d 1369 (Miss.1990) (Rule 803(1) did not apply because statements were not made while event was occurring or shortly thereafter). *But cf. United States v. Blakey,* 607 F.2d 779 (7th Cir.1979), *overruled, in part, on other grounds, U.S. v. Harty,* 930 F.2d 1257 (7th Cir.1991) (substantial contemporaneity is still satisfied even though time lapse may have been up to twenty-three minutes).

admission of this evidence. *See State v. Williams*, 395 A.2d 1158, 1163 (Me.1978) ("victim's statement ... coming as it did after an undetermined lapse of time from the triggering event, does not possess the indicia of trustworthiness to qualify as a present sense impression").

■ The second element of the present sense impression exception is that the statement must describe or explain the event or condition and not just "relate to" the event, as is permissible for excited utterances. Therefore, a statement that is only evoked by an event and does not describe it is inadmissible under Rule 803(1). This limitation may be the deciding factor in cases where it is doubtful whether an event is sufficiently exciting to fit within the excited utterance exception of Rule 803(2). *See* Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 803(1)[01] at 803–95 (1994). Similarly, certain statements like "[n]arratives of past events or statements on other subjects are meant to be excluded ... because they lack the required contemporaneity." Jack B. Weinstein & Margaret A. Berger, *supra*, at ¶ 803(1)[01] at 803–95. (Footnote omitted). *See also United States v. Phelps*, 572 F.Supp. 262 (E.D.Ky.1983) (declarant's statements involved event occurring in past instead of present sense impression).

■ The third element that is implied by the text of Rule 803(1) is there must be proof that the declarant is speaking from personal knowledge. Personal knowledge does not mean the declarant of the present sense impression is required to be a participant in the event described. The difficult question under this element is what is the "quantity and quality of evidence required to demonstrate the existence of the requisite personal knowledge[?]" *Booth v. State*, 306 Md. at 325, 508 A.2d at 981. At times, if the statement is sufficiently descriptive, it may itself demonstrate the declarant's knowledge. However, barring this happenstance, a trial court is permitted to accept extrinsic evidence to satisfy this requirement. The personal knowledge requirement, while not *de minimus*, is not meant to be a very difficult standard and may be satisfied if it is more likely than not that the evidence proves the percipiency of the declarant. *See* W.Va. R.Evid. 104(b) & 602.[10]

■ The last point we must consider is whether the declarant's statements must be corroborated by an independent and equally percipient witness. Jurisdictions disagree about whether these independent observers are necessary for admissibility. There are three competing viewpoints on the necessity of corroboration: the first group rejects a corroboration requirement[11]; the second group finds corroboration is a factor guaranteeing trustworthiness[12]; and the third group requires corroboration.[13] The advantage, of course, in requiring strict corroboration is that a statement's reliability not only

---

**10.** Rule 104(b) of the Rules of Evidence provides: *"Relevancy Conditioned on Fact.*—When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

Rule 602 of the Rules of Evidence provides: **"Lack of Personal Knowledge.** A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. This rule is subject to the provisions of Rule 703 relating to opinion testimony by expert witnesses."

**11.** *See United States v. Medico*, 557 F.2d 309 (2nd Cir.), *cert. denied*, 434 U.S. 986, 98 S.Ct. 614, 54 L.Ed.2d 480 (1977); *United States v. Obayagbona*, 627 F.Supp. 329 (E.D.N.Y.1985); *State v. Flesher*, 286 N.W.2d 215 (Iowa 1979); *Commonwealth v. Coleman*, 458 Pa. 112, 326 A.2d 387 (1974).

**12.** *See United States v. Blakey, supra; Robinson v. Shapiro*, 484 F.Supp. 91 (S.D.N.Y 1980), *judgment affirmed & modified on other grounds by* 646 F.2d 734 (1981); *United States v. Narciso, supra; MCA, Inc. v. Wilson*, 425 F.Supp. 443 (S.D.N.Y.1976), *judgment affirmed & modified on other grounds by* 677 F.2d 180 (1981).

**13.** *See In Re Japanese Electronic Products*, 723 F.2d 238 (3rd Cir.1983), *rev'd on other grounds sub nom., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *abrogated on other grounds by Pfeiffer v. School Bd. for Marion Center Area*, 917 F.2d 779 (3rd Cir.1990); *People v. Watson*, 100 A.D.2d 452, 474 N.Y.S.2d 978 (1984).

will be enhanced, but there will be a separate witness available to question concerning the events surrounding the statement. However, the end result of such a strict requirement is that many trustworthy, uncorroborated statements would be excluded simply out of formulaic concerns.

We reject both extremes and follow those states that use corroboration merely as a relevant element bearing on trustworthiness. Thus, we find that it is within the discretion of a trial court to consider corroborating evidence "in determining whether a statement not exactly contemporaneous qualifies for admission." Weinstein & Berger, *Weinstein's Evidence* ¶ 803(1)[01] at 803–93. By adopting this corroboration element, we do not mean to suggest that a separate showing of trustworthiness is required for a statement to be admissible. A descriptive statement made by a percipient declarant contemporaneous with an event is sufficient to justify admissibility. *See* 2 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 8–3(B)(1) at 194. *See also* Stanley A. Goldman, *Not so "Firmly Rooted": Exceptions to the Confrontation Clause, supra* (discussing the shortcomings of various hearsay exceptions and advocating a case-by-case trustworthiness analysis).

### 2. Then Existing Mental, Emotional, or Physical Condition

The second hearsay exception at issue in this case is the then existing mental, emotional, or physical condition exception under Rule 803(3) of the Rules of Evidence. Under Rule 803(3), a statement which is hearsay is admissible if it is "a statement of the declarant's then existing state of mind, emotion, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)[.]" This exception encompasses the following four kinds of extrajudicial statements:

"statements of present bodily condition; statements of present state of mind or emotion, offered to prove a state of mind or emotion of the declarant that is 'in issue'

in the case; statements of present state of mind—usually intent, plan, or design—offered to prove subsequent conduct of the declarant in accordance with the state of mind; and statements of a testator indicating his state of mind offered on certain issues in a will case." 2 Franklin D. Cleckley, *Handbook on West Virginia Evidence* § 8–3(B)(3) at 207.

Statements admissible under Rule 803(3) must relate to the state of mind existing at the time of the communication. As a result of this requirement, the statements take on special reliability because of the "spontaneous quality of the declarations[.]" 2 John W. Strong, *McCormick on Evidence* § 273 at 226 (4th ed. 1992). Necessity also plays a key factor in the admissibility of statements under Rule 803(3). Frequently, the mental or physical condition of a declarant is of great significance in a case. Spontaneous statements as to condition at the time the statement was made are often the best and only indications of the declarant's condition at the time in question.

■ The first two categories of statements admissible under this exception are fairly straightforward. The first—statements of present state of mind to prove the state of mind of the declarant that is in issue in a case—is admissible to prove such things as motive, intent, reliance, etc., of the declarant. However, the key factor for this type of statement is that the declarant's state of mind is at issue and relevant to the resolution of the case.[14] As a partial guarantee of trustworthiness, the statements introduced must be made under circumstances indicative of sincerity. 2 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 8–3(B)(3)(c) at 209.

■ The second category of statements permissible under this exception—statements of present bodily condition—is similar to the first form of excepted hearsay in that statements proving the declarant's present physical condition are also admissible when relevant. *See, e.g., Fidelity Serv. Ins. Co. v.*

14. *Cf.* 2 John W. Strong, *McCormick on Evidence* § 273 at 228 (text and n. 3) (4th ed. 1992) (indicating that courts at times have "tended to lump together statements asserting the declarant's state of mind, hence arguably hearsay, with those tending to prove the state of mind circumstantially, arguably nonhearsay").

*Jones,* 280 Ala. 195, 191 So.2d 20 (1966) (declarant complained of blackouts and sickness); *Shover v. Iowa Lutheran Hosp.,* 252 Iowa 706, 107 N.W.2d 85 (1961) (witness testified that plaintiff said she was hurt).[15] However, statements as to past physical or mental condition are not permissible under either the first or second category.

■ The third manner of admitting statements under Rule 803(3) is as proof of the declarant's subsequent action in compliance with the state of mind. *State v. Gangwer,* 168 W.Va. 190, 198, 283 S.E.2d 839, 844 (1981). *See also Mutual Life Ins. Co. of N.Y. v. Hillmon,* 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892), *superseded by rule as stated in U.S. v. Houlihan,* 871 F.Supp. 1495 (D.Mass.1994) (a seminal case for this form of statement). Under this form of statement, the declarant's state of mind does not have to be in issue in the case; the exception extends to include statements that are "merely relevant evidence on an external fact in dispute concerning the declarant's conduct at a subsequent time." 2 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 8–3(B)(3)(c) at 211. The special reliability implicit in the other forms of statements is often less in this category because "it is significantly less likely that a declared intention will be carried out than it is that a declared state of mind is actually held." 2 John W. Strong, *McCormick on Evidence* § 275 at 234. For example, in a murder prosecution, a defendant's statements that he planned on killing the victim is stronger evidence of the defendant's malice toward the victim than that the defendant actually committed the murder. *See* 2 John W. Strong, *McCormick on Evidence* § 275 at 234.

■ The fourth form of statements permits admission of statements of a testator that indicate his state of mind on certain issues. Statements of memory or belief, which are excluded under the other categories,[16] are admissible to prove the testator's statements about various issues relating to the " 'execution, revocation, identification, or terms' " of a will. 2 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 8–3(B)(3)(d) at 214. However, other forms of statements like those showing the conduct of others are inadmissible.

■ A statement introduced under the state-of-mind exception must also be tested under the relevancy requirements of Rule 401 [17] and 402 [18] of the Rules of Evidence before it can be admitted. *See* 2 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 8–3(B)(3)(a); *State v. Gangwer, supra.* If the declarant's state of mind, etc., is irrelevant to the resolution of the case, then the evidence must be excluded. *United States v. Kelly,* 718 F.2d 661 (4th Cir.1983).

■ After determining the relevancy of the evidence, a trial court must evaluate the probative and prejudicial weight of the evi-

---

15. Furthermore, statements of physical condition do not have to be made to physicians for them to be admissible. *See Shover v. Iowa Lutheran Hosp., supra* (statements to roommate of hospital patient); *Fagan v. Newark,* 78 N.J.Super. 294, 188 A.2d 427 (App.Div.1963) (statements made to co-workers and wife).

16. *See e.g. United States v. Fontenot,* 14 F.3d 1364 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 431, 130 L.Ed.2d 343 (1994) (affirming defendant's conviction for murdering his wife, court held statements that defendant believed he and wife were in danger were inadmissible under Rule 803(3) because they were statements of belief as opposed to state of mind). Additionally, the Notes of Advisory Committee on 1972 Proposed Rules commenting on Federal Rules of Evidence 803(3) provide:

"The exclusion of 'statements of memory or belief to prove the fact remembered or be-lieved' is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind."

17. Rule 401 reads, in pertinent part: " 'Relevant evidence' means evidence having the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

18. Rule 402 reads, in pertinent part: "All evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of West Virginia, by these rules, or by other rules adopted by the Supreme Court of Appeals. Evidence which is not relevant is not admissible."

dence under Rule 403. *State v. Satterfield,* 193 W.Va. at 512, 457 S.E.2d at 449. Rule 403 creates a balancing test allowing the exclusion of relevant evidence if the "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The evaluation of the probative weight versus prejudicial weight of evidence is left to the sound discretion of the trial court and its judgment will not be overturned absent an abuse of discretion. *Gable v. Kroger Co.,* 186 W.Va. 62, 410 S.E.2d 701 (1991); *State v. Dillon, supra.* Additionally, "[t]he balancing necessary under Rule 403 must affirmatively appear on the record." *State v. McGinnis,* 193 W.Va. 147, 156, 455 S.E.2d 516, 525 (1994).

Testing state-of-mind evidence under Rule 403 is imperative because the failure to do so could result in the admission of statements that fit within the language of Rule 803(3), but are highly prejudicial. One form of prejudice that could result is when a statement reflecting the state of mind of a declarant is used "for the truth of an event other than the declarant's state of mind." 3 Stephen A. Saltzburg, Michael M. Martin, and Daniel J. Capra, *Federal Rules of Evidence Manual* at 1399. Thus, a statement reflecting a victim's fear of a defendant, which could permissibly show the victim was unlikely to behave in a certain manner,[19] might also be misused to show the victim had reason to fear the defendant. If such a case arose, the statement would have to be challenged under Rule 403 because there is no provision in Rule 803(3) to exclude potentially prejudicial statements of this nature.

### 3. Admissibility of the Statements

Having reviewed the standards for the hearsay exceptions implicated in this case, we must now determine whether the trial court properly admitted any of the contested statements under Rules 803(1) or 803(3). We will discuss the testimony of the following four witnesses: Dora Clark, Vonda Abbott, Patty Isner Marsh, and Mary Phillips.[20]

---

**19.** *See e.g., United States v. Hartmann,* 958 F.2d 774 (7th Cir.1992) (murder victim's statements that described poor state of marriage, desire to remove wife's name from insurance policy as beneficiary, and fear that wife and wife's lover were going to murder him were admissible under Rule 803(3) to prove victim's attitude about insurance policies in case against defendants convicted of mail fraud, wire fraud, and interstate transportation of funds obtained by fraud); *United States v. Green,* 680 F.2d 520 (7th Cir.), *cert. denied,* 459 U.S. 1072, 103 S.Ct. 493, 74 L.Ed.2d 635 (1982) (probative value outweighed prejudicial effect of victim's statements in murder and kidnapping case against defendant because the statements tended to show it was unlikely victim voluntarily would have accompanied the defendant).

**20.** The defendant also argues that some of the testimony of two other witnesses should have been excluded as impermissible hearsay. Beverly Mullenax was a former employee at the Shop 'N' Save owned by Mr. and Mrs. Phillips. On direct examination by the prosecution, Ms. Mullenax admitted she knew the defendant and Linda Hedrick were involved at the time of trial. However, she stated she did not know about the relationship at the time of the victim's death. Ms. Mullenax also denied having any personal knowledge about any other romantic relationships the defendant might have had.

Tammy Samples was a close friend of the victim. The prosecution asked Ms. Samples whether the defendant made an "unusual comment" while she, the victim, and the defendant were together the Saturday before the victim's death. Ms. Samples responded:

"Yes. We were joking and laughing and carrying on in the truck and Craig bent over and said, Tammy, you can expect an invitation in the mail. I said, why, where are we going? And he said when Cindy dies she wants a funeral by invitation only, and Cindy proceeded to say that's right. When I die I don't want any of Craig's old sluts in the funeral home."

Ms. Samples acknowledged that she considered the defendant's comments a joke at the time. We find no merit in the defendant's contentions with regard to Ms. Samples. The defendant waived his right to a review of the testimony of Ms. Samples by failing to object. *See Tennant v. Health Care Found., Inc.,* 194 W.Va. 97, 104–05, 459 S.E.2d 374, 391–92 (1995). Additionally, Ms. Mullenax's testimony referring to the defendant's past infidelities was based on firsthand knowledge, did not involve an extrajudicial statement, and was not hearsay within the contemplation of our hearsay definition. However, we believe the testimony of Ms. Mullenax was inadmissible for another reason. The prosecution argued that this evidence, although usually irrelevant, was relevant to prove motive and presumably was admissible under Rule 404(b). To the contrary, this testimony is similar to that previously condemned because the trial court failed to provide the defendant with the procedural protections we adopted in *State v. McGinnis, supra.*

At trial, two of the victim's sisters, Dora Clark and Vonda Abbott, testified that the victim, Mrs. Abbott, and others traveled to Florida to visit Mrs. Clark and her family during February of 1991. It was asserted that on February 9, 1991, the victim had a telephone conversation with the defendant. After the call, the victim became very upset and stated she believed the defendant was having an affair and, when she returned to West Virginia, she would divorce him and seek half of the marital assets. The prosecution sought a ruling *in limine* regarding Mrs. Clark's testimony. During both of the hearings, the prosecution offered the same justification for the admission of this testimony:

"[PROSECUTION]: Yes, Your Honor, I believe that testimony about Dora Clark in Florida will be also relevant for under number 803(1). The testimony and foundation for that will be there was a telephone call received from Mr. Phillips while she [the victim] was at her sister's house in Florida, and upon receiving the telephone call she was very upset, and in the presence of Dora Clark, her sister, Vonda Abbott, her sister, and Alvin Abbott, her brother-in-law, she made those statements. They included ... the plan that she was going to come home and tell Craig [the defendant] she was going to get a divorce. ...

"THE COURT: Do you know how long after she received this phone call?

"[PROSECUTION]: Immediately. When she [the victim] came out—when I say immediately within five minutes, Your Honor. My understanding is the foundation for this will be that she came out of the bedroom where she received the call into—maybe passing into the living room into the kitchen where the ladies were."

Defense counsel objected to Mrs. Clark's testimony based mainly upon relevancy. The trial court admitted the evidence under Rule 803(1), present sense impression, and/or Rule 803(3), state-of-mind:

"THE COURT: The Court is of the impression that the hearsay testimony expected to be elicited by the defendant is an exception to the hearsay rule under 803(1) assuming that the statement made by the declarant was made shortly after a phone call between her and her husband, and will be admitted as a hearsay exception. The Court further believes that the statement is relevant to show overall motive concerning that crime of which the defendant stands accused. Show the objection of the defendant to the ruling of the Court."

At trial, the prosecution asked both witnesses a few preliminary questions about the victim answering a telephone call from the defendant and the victim's emotional state following the call. Both witnesses confirmed the fact the victim was upset and crying after talking on the phone to the defendant. The prosecution specifically asked both the witnesses whether the victim said anything about a divorce and a possible property settlement. Mrs. Clark responded "she [the victim] said she was at her wits end, and she wanted to get a divorce" and the victim wanted half of the marital assets to care for her son who suffered from diabetes and because she deserved half since she had worked hard for the property.

Mrs. Abbott's response to the prosecution's questions was nearly identical. In her testimony, Mrs. Abbott stated that the victim said "she was going to get a divorce * * * [and that] ... [s]he only wanted half of what she worked so hard to get." Unlike the prosecution's proffer during the hearings, neither of the witnesses admitted at trial that the victim planned to confront the defendant.

The Phillips' housekeeper, Patty Isner Marsh, testified the couple had marital problems and that the defendant had extramarital affairs. Ms. Marsh testified the victim told her the defendant "hadn't touched her physically since she came back from Hawaii ... [and that] [i]n fact she said he hadn't made love to her[.]" Ms. Marsh also indicated this fact concerned the victim. The prosecution then asked Ms. Marsh whether she was aware of a relationship between the defendant and Linda Hedrick. The witness responded she knew the defendant was having an affair with someone prior to the victim's death, but did not know who it was until after the victim died. Ms. Marsh also answered "yes" when the prosecution asked her whether she knew if the defendant had prior

affairs. Upon request, Ms. Marsh proceeded to discuss other affairs. However, the defense quickly objected. The trial court ruled Ms. Marsh could testify only about affairs of which she had personal knowledge and instructed the jury to disregard any statements regarding affairs with people other than the one in which Ms. Marsh had personal knowledge. She also implied that when the defendant would finish an affair, he would give his wife a ring, which the wife then nicknamed after each paramour.

Mary Phillips testified that three days before the shooting, the victim came into a store where Ms. Phillips was working and appeared to be upset. Ms. Phillips testified she asked the victim why she was upset and the victim told her she had found a receipt for an expensive ring. The prosecution then asked the witness whether the victim said anything about the ring and what the victim actually said. In response, Ms. Phillips testified the victim stated "that there had been one [ring] purchased at a Elkins jewelry store ... and that she [the victim] was going to go to try to find out who it was purchased for. And if she did find out, and could get evidence, I guess, then she was going to file for a divorce." These statements were admitted under Rule 803(3), the state-of-mind exception.

The prosecution contends the trial court properly admitted the statements, allowing it to prove the victim was contemplating divorce because of the defendant's longstanding affair with another woman. The resultant disharmony coupled with the valuable assets of the couple offered a motive for the defendant to murder his wife. The prosecution argues that if the admission of this evidence was improper, it did not have a prejudicial effect upon the jury sufficient to warrant reversal. We disagree and find the trial court erred in admitting the aforementioned statements as exceptions under Rule 803(1) or Rule 803(3).

First, the inapplicability of Rule 803(1) is obvious. None of the disputed testimony describes or explains any particular event or condition. Second, without focusing on a particular event or condition, the statements are unable to satisfy the requirement of contemporaneity. Although a startling event is not required under Rule 803(1), it is necessary that the statement describing a particular event or condition be made at the time the event or condition is occurring or very shortly thereafter. Far from describing or explaining an event or condition, the victim's comments to the witnesses were only narrative statements of what the victim knew from past information and what future action she intended to take based on her husband's past infidelities. For example, the victim's comments to her sisters after the telephone conversation were not an attempt to describe or explain the conversation, but were rather a revelation of her marital relationship with the defendant. Similarly, her statements to Ms. Marsh and Ms. Phillips were merely descriptions of past experiences and future plans. Rule 803(1) guarantees of trustworthiness are entirely absent in these conversations.

As stated by the Pennsylvania court in *Commonwealth v. Farquharson*, 467 Pa. 50, 68, 354 A.2d 545, 554 (1976), *citing Commonwealth v. Coleman*, 458 Pa. 112, 117, 326 A.2d 387, 389 (1974):

> "Under this exception the necessity for the presence of a startling occurrence or accident to serve as a source of reliability is not required. The truthfulness of the utterance is dependent upon its spontaneity. It must be certain from the circumstances that the utterance is a reflex product of immediate sensual impressions, unaided by retrospective mental processes. Restated, the utterance must be 'instinctive, rather than deliberate.' "

Here, the evidence failed to establish the declaration of the victim was " 'instinctive, rather than deliberative—in short, the reflex product of the immediate sensual impression, unaided by retrospective mental action.' " *Municipality of Bethel Park v. W.C.A.B.*, 161 Pa.Commw. 274, 280, 636 A.2d 1254, 1257, *appeal granted*, 538 Pa. 617, 645 A.2d 1320 (1994). (Citations omitted). It was, rather, an expression based on the victim's past knowledge of the defendant. As suggested earlier, a statement that is only evoked by an event but does not describe it is inadmissible under Rule 803(1).

The argument for admissibility under Rule 803(3) is more persuasive considering the victim's statements could have indicated her state of mind; but, even here, there are several problems preventing the admissibility of the statements under this exception. Although the declarant's state of mind does not have to be directly in issue for the statement to be admissible under Rule 803(3), where a statement is introduced to show the declarant subsequently acted in compliance with this state of mind, the state of mind must be relevant.[21] In this case, the declarant's state of mind was not directly in issue and was only remotely related to the issues in this case. The issue before the jury was whether the shooting was accidental. When standing alone, it was of no consequence to the jury's task whether the victim believed her husband had been unfaithful and she intended to pursue divorce proceedings.

In some criminal cases, the state of mind of the victim may be relevant to show such things as the victim's probable behavior in cases where the defendant is claiming self-defense or that the victim voluntarily behaved in a certain manner.[22] In this case, the defendant is contending his wife's death resulted from an accident. None of the statements admitted would have been useful in refuting this defense.[23] The contention that the testimony was relevant to prove motive is too tenuous. Even if we analyze the evidence under the more liberal Rule 104(b),[24] we do not believe the evidence introduced by the prosecution is sufficient to support a finding that the defendant's motive to kill his wife was because of her efforts to get a divorce. In fact, the closest case we can find to the facts in this case is *People v. Lang*, 106 Ill.App.3d 808, 815, 62 Ill.Dec. 510, 516, 436 N.E.2d 260, 263 (1982). There, the court held the victim's state of mind was relevant to rebut the defendant's claim that the marriage was a happy one and that the shooting of the wife was accidental. The defendant attempted to establish that on the night of the shooting he and the victim attended a family gathering. The prosecution was permitted to introduce evidence that the wife made several statements to her friends in regard to the rotten relationship she had with her husband. The court found in light of this evidence the victim's state of mind was relevant:

"The statements were relevant to the case because of the defendant's testimony on behalf of the defense.... [T]he defendant also testified that he had a good marriage

---

**21.** Christopher B. Mueller & Laird C. Kirkpatrick in Section 8.38 at 934 of *Evidence* (1995) state:

"Using statements to prove intent, hence later conduct by the speaker, cannot be defended by claims of trustworthiness and necessity so strongly as using them to prove the speaker's state of mind as an end in itself, where immediacy and directness are salient points. When the purpose is to prove conduct, statements of intent usually lack these qualities, and they bring special perils: It is commonplace, for example, to exaggerate or overplay statements of intent, to report wishful thinking as firm resolve, to speak casually while knowing most such statements are 'taken with a grain of salt,' to rely on intention as substitute for actually doing something, and even to mistake one's own intent. And it is a familiar fact of life that obstacles, distractions, changes of heart, and human weakness intervene between intending and doing, and passage of time may bring to light mistakes or miscalculations that led one to change course. And when the point is to prove conduct, usually there is nonhearsay evidence that can be tested by courtroom questioning."

**22.** *See e.g. State v. Jackson*, 94 Ariz. 117, 382 P.2d 229 (1963); *Morrison v. Lowe*, 267 Ark. 361, 590 S.W.2d 299 (1979); *McBride v. United States*, 441 A.2d 644 (D.C.App.1982).

**23.** The only manner that Rule 803(3) could be applicable is if we stretched the exception to cover a third party's subsequent action in compliance with the declarant's state of mind. Some authorities have addressed using a declarant's state of mind to prove actions of codefendants. *See* 2 John W. Strong, *McCormick on Evidence* § 275 at 236 (noting "[t]he danger of unreliability is greatly increased when the action sought to be proved is not one that the declarant could have performed alone, but rather is one that required the cooperation of another person"). We decline to extend Rule 803(3) in this fashion out of fear that the exception will swallow the rule. Additionally, permitting such an extension would violate the essence of the Rules of Evidence and potentially breach the constitutional rights of a defendant.

**24.** *See* note 10, *supra*.

and believed that the decedent was happy in the marriage.

\* \* \* \* \* \*

"... The rebuttal testimony as to the decedent's state of mind was relevant to *rebut* the defense testimony concerning the marital accord between the defendant and the decedent, to respond to the defendant's version of how his wife was shot and to suggest a possible motive for the defendant's crime." 106 Ill.App.3d at 815, 62 Ill.Dec. at 516, 436 N.E.2d at 266. (Emphasis added).

Of course, the key to that case was that the testimony concerning the wife's state of mind came in rebuttal to the defendant's claim of a happy marriage. In the case *sub judice*, the prosecution initiated the evidence in its case-in-chief. No door had been opened by the defense.

There are other difficulties with the trial court's ruling that must be addressed. First, there are two components to the victim's statement: (a) She intended to get a divorce and to seek half of the marital assets; and (b) she was going to do take this action because the defendant had or was ·engaging in extramarital affairs. Even if the declarations were relevant to show the state of mind of the wife, the statements as suggested above go much further and reveal details about extramarital affairs. The latter statement is not reflective of future intentions, but is a fact remembered and is specifically excluded from the exception. We, recently adopted the hearsay analysis of the United States Supreme Court in *Williamson v. United States*, —— U.S. ——, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), when dealing with narrative extrajudicial statements. In *State v. Mason*, 194 W.Va. at 229–230, 460 S.E.2d at 44–45, we stated:

"Using the broad definition of 'statement' articulated in Rule 801(a)(1)—'an oral or written assertion'—as a point of departure, *Williamson* went on to explain the significance of the term for purposes of Rule 804(b)(3). *Williamson,* —— U.S. at ——, 114 S.Ct. at 2434, 129 L.Ed.2d at 482. Specifically, the Supreme Court concluded that the word 'statement' means ' "a single declaration or remark," ' rather than ' "a report or narrative," ' reasoning that this 'narrower reading' is consistent with the principles underlying the rule. —— U.S. at ——, 114 S.Ct. at 2434–35, 129 L.Ed.2d at 482, *quoting Webster's Third New International Dictionary* 2229, defn. 2(a) and (b) (1961). Thus, when ruling upon the admission of a narrative under this rule, a trial court must break down the narrative and determine the separate admissibility of each ' "single declaration or remark." ' This exercise is a 'fact-intensive inquiry' that requires 'careful examination of all the circumstances surrounding the criminal activity involved[.]' —— U.S. at ——, 114 S.Ct. at 2437, 129 L.Ed.2d at 486."

Had the trial court dissected each part of the hearsay statements of each witness, it is clear that all the conversations of the victim could not qualify under either of the exceptions. Second, the trial court, when confronted with a relevancy objection, failed to comply with any of the standards we established in *State v. McGinnis, supra,* and its progeny.[25] In addition to not being within the Rule 803(3) exception, these statements when admitted without judicial control and supervision became very detrimental to the defendant because of their potential for misuse by the jury.

Because we find the admission of these statements error, we must now determine whether their admission constituted reversible error. When dealing with the wrongful admission of evidence, we have stated that the appropriate test for harmlessness is whether, after stripping the erroneous evidence from the whole, we can say with fair

**25.** Under Rule 105 of the West Virginia Rules of Evidence, if evidence is inadmissible under one theory but is admissible under another rule, exception, or theory, then the admission of such evidence is proper if an adequate limiting instruction is given. Arguably, the statements could have been admitted as nonhearsay as proof of motive, intent, etc., under Rule 404(b). However, the proponents of the statements would have to satisfy the requirements set forth in *State v. McGinnis, supra.* There was no attempt to satisfy these stringent requirements and, more importantly, the jury was never advised of any limited purpose for which the evidence could be used.

assurance that the remaining evidence independently was sufficient to support the verdict and the jury was not substantially swayed by the error. *State v. Atkins,* 163 W.Va. 502, 261 S.E.2d 55 (1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980).

After excluding all the impermissible evidence, we cannot say the jury would have arrived at the same result considering the pervasive nature of the evidence admitted. There is no direct evidence as to what happened that fateful morning, and the State relied on circumstantial evidence of the victim's state of mind and her intention to seek a divorce to set the scene for the incident. Despite the prosecution's attempts to downplay the importance of the contested testimony, it is clear the statements constituted a significant portion of the State's theory of the defendant's motive. We, of course, do not know what the jury found persuasive. However, it is not improbable to believe the jury found the evidence of marital infidelity extremely compelling. For these reasons, we cannot find the wrongful admission of this evidence to be harmless error.

## B.

### *Jury Panel*

The defendant asserts two jurors should have been struck for cause. During individual *voir dire,* both of these potential jurors admitted that evidence of adultery might have a negative impact on their determination of the defendant's guilt. Under this theory, the defendant makes two arguments: (1) He was denied an impartial jury panel; and (2) because the defendant was required to use two of his peremptory challenges on the two allegedly disqualified jurors, he was denied his statutory right to six peremptory challenges. The prosecution argues the trial court did not err in refusing to strike the two jurors for cause because neither said that their dislike of adultery alone would dictate their verdict.

The defendant made a pretrial motion for individual *voir dire* of the jury, and the trial court granted this motion. The individual *voir dire* of the prospective jurors was con-

ducted in the judge's chambers after the preliminary disqualification of five jurors and the dismissal of fourteen more jurors for bias or personal relationships. During the *voir dire* questioning, two of the jurors, Nancy Mayle and Pat Hollen, indicated their general dislike of adultery. After thorough questioning by the trial court and counsel, the defendant objected to both the jurors for cause, arguing the jurors would not be able to separate their bias against adultery from the determination of the defendant's guilt.

The first part of the defendant's argument is that the presence of the two biased jurors on the jury panel denied his right to an impartial jury under the Sixth and Fourteenth Amendments to the United States Constitution and Section 14 of Article III of the West Virginia Constitution. We find the defendant's reliance on an accused's constitutional right to an impartial jury is misplaced.

In *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), the defendant asserted he was denied his constitutional right to an impartial jury because he was forced to use one of his peremptory challenges when the trial court failed to remove a juror for cause. The Supreme Court agreed that the juror should have been dismissed for cause. However, affirming the defendant's conviction, the Supreme Court specifically held that the loss of a peremptory challenge because of a trial court's improper failure to grant a challenge for cause does not amount to a violation of a constitutional right without a showing of prejudice. The Supreme Court reasoned that even though the defendant was forced to use a peremptory challenge to cure the trial court's error, the loss of a peremptory challenge did not impair his right to an impartial jury. The Supreme Court also repeated its long held opinion that "peremptory challenges are not of constitutional dimension." 487 U.S. at 88, 108 S.Ct. at 2278, 101 L.Ed.2d at 90. Thus, "[s]o long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." 487 U.S. at 88, 108 S.Ct. at 2278, 101 L.Ed.2d at 90. We

concur with this part of the *Ross* opinion.[26]

The mere presence of a biased prospective juror on a jury panel, although undesirable, does not threaten a defendant's constitutional right to an impartial jury if the biased panel member does not actually serve on the jury that convicts the defendant. Although a defendant may be forced to use a peremptory challenge to remove a juror that should have been removed for cause does not alone invalidate the fact "the juror was 'thereby removed from the jury as effectively as if the trial court had excused him for cause.'" *U.S. v. Cruz*, 993 F.2d 164, 168 (8th Cir. 1993), *quoting Ross v. Oklahoma*, 487 U.S. at 86, 108 S.Ct. at 2277, 101 L.Ed.2d at 88. Peremptory challenges are merely a means of achieving an impartial jury. They are "neither mandated by the [United States or the West Virginia] Constitution nor of constitutional dimension" and we will not permit the loss of a peremptory challenge to establish the breach of a constitutional guarantee in this context. *U.S. v. Towne*, 870 F.2d 880, 885, *cert. denied*, 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989). *See also Ross v. Oklahoma*, 487 U.S. at 89, 108 S.Ct. at 2278–79, 101 L.Ed.2d at 90–91; *Gaskins v. McKellar*, 916 F.2d 941, 949 (4th Cir.1990), *cert. denied*, 500 U.S. 961, 111 S.Ct. 2277, 114 L.Ed.2d 728 (1991).

█ Thus, we now hold that a trial court's failure to remove a biased juror from a jury panel does not violate a defendant's right to a trial by an impartial jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Section 14 of Article III of the West Virginia Constitution. In order to succeed in a claim that his or her constitutional right to an impartial jury was violated, a defendant must affirmatively show prejudice.

█ In the present case, the defendant removed the prospective jurors with peremptory challenges. He does not assert that the jury which finally tried the case was biased or prejudiced. There is no evidence the defendant challenged any of the remaining jurors for cause. Consequently, he has not shown any prejudice from the trial court's denial of his challenges for cause as required by *Ross*.

Our analysis of this assignment of error cannot end here. The second part of the defendant's argument raises two questions: (1) What effect does a trial court's erroneous ruling on a challenge for cause have on a defendant's statutory right to a bias-free panel; and (2) does the dilution of peremptory challenges from such error entitle a defendant to a reversal?

Although peremptory challenges may be only a means to an end in a constitutional setting, they are still " ' "one of the most important of the rights secured to the accused." ' " *Ross v. Oklahoma*, 487 U.S. at 89, 108 S.Ct. at 2278, 101 L.Ed.2d at 90. (Citations omitted). However, "it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise." 487 U.S. at 89, 108 S.Ct. at 2279, 101 L.Ed.2d at 90. Therefore, it is necessary to resort to our statutory and case law to determine whether a defendant's " 'right' to peremptory chal-

---

**26.** Without question, an accused is guaranteed a right to an impartial jury under the United States Constitution and the West Virginia Constitution. We stated in Syllabus Point 4 of *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994):

" 'The right to a trial by an impartial, objective jury in a criminal case is a fundamental right guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article III, Section 14 of the West Virginia Constitution. A meaningful and effective *voir dire* of the jury panel is necessary to effectuate that fundamental right.' Syllabus Point 4, *State v. Peacher*, 167 W.Va. 540, 280 S.E.2d 559 (1981)"

*See also State v. Curtin*, 175 W.Va. 318, 321, 332 S.E.2d 619, 622 (1985) ("[t]he purpose of conducting a *voir dire* examination of a jury is to find jurors who are qualified, not related to either party, and with no interest in the cause or sensible of any bias or prejudice"). To ensure impartiality, parties to a case are given "wide latitude in engaging in *voir dire* examination of such jurors." *State v. McClure*, 184 W.Va. 418, 422, 400 S.E.2d 853, 857 (1990). However, the ultimate question of juror qualification is left to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *See* Syl. pt. 5, in part, *State v. Derr, supra* (" ' "In a criminal case, the inquiry made of a jury on its *voir dire* is within the sound discretion of the trial court and not subject to review, except when the discretion is clearly abused" ' " (citation omitted)); *State v. McClure, supra*.

lenges is 'denied or impaired[.]'" *Ross v. Oklahoma*, 487 U.S. at 89, 108 S.Ct. at 2279, 101 L.Ed.2d at 91.

■ Unlike *Ross*, our State law does not make a specific qualification that peremptory challenges be used to cure a trial court's errors.[27] In fact, pursuant to W.Va. Code, 62–3–3 (1949), a defendant is entitled to a panel of twenty jurors, *free from exception*, before he or she is called upon to exercise peremptory challenges.[28] We have found "if proper objection is raised at the time of impaneling the jury, it is reversible error for the court to fail to discharge a juror who is obviously objectionable." *State v. West*, 157 W.Va. 209, 219, 200 S.E.2d 859, 866 (1973). Furthermore, in *State v. Wilcox*, 169 W.Va. 142, 144, 286 S.E.2d 257, 259 (1982) (per curiam opinion), *citing* W.Va. Code, 62–3–3, and various cases, we specifically noted that denying a valid challenge for cause of a jury panel member is reversible error "even if the disqualified juror is later struck by a peremptory challenge." We reaffirm the rule in *Wilcox* and find that the language of W.Va. Code, 62–3–3, grants a defendant the specific right to reserve his or her peremptory challenges until an unbiased jury panel is assembled. Consequently, if a defendant validly challenges a prospective juror for cause and the trial court fails to remove the juror, reversible error results even if a defendant subsequently uses his peremptory challenge to correct the trial court's error.

Apart from the defendant's failure to show prejudice in the constitutional sense, the trial court determined that Ms. Mayle and Mr. Hollen could serve impartially. Thus, the only remaining question is whether the jurors should have been removed for cause because of bias. Because we have decided to reverse on other grounds, we need not make a definitive decision of this issue. We do believe, however, that we should offer some guidance.

■ The true test of whether a juror is qualified to serve on the panel is whether he or she can render a verdict solely on the evidence without bias or prejudice under the instructions of the court. *State v. White*, 171 W.Va. 658, 301 S.E.2d 615 (1983); *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982); *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981). When a defendant seeks the disqualification of a juror, the defendant bears the burden of "rebut[ting] the presumption of a prospective juror's impartiality[.]" *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751, 756 (1961).

■ A trial court's ruling on a challenge for cause is reviewed under an abuse of discretion standard. *See State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994). Because "'determination[s] of impartiality, in which demeanor plays such an important part, ... [are] within the province of ... [a] trial judge,'" an appellate court should not disturb a trial court's decision to deny challenges for cause without a showing of abuse of discretion or manifest error. *Ristaino v. Ross*, 424 U.S. 589, 595, 96 S.Ct. 1017, 1020, 47 L.Ed.2d 258, 263 (1976). (Citation omitted).

**27.** In the second part of *Ross v. Oklahoma, supra*, the Supreme Court found the trial court's failure to dismiss the juror for cause not only did not implicate the defendant's constitutional rights, but no state law interests were violated because the defendant was forced to use a peremptory challenge to cure the trial court's error. The Supreme Court based the second part of its holding on the fact that Oklahoma's "grant ... [of peremptory challenges was] qualified by the requirement that the defendant must use those challenges to cure erroneous refusals by the trial court to excuse jurors for cause." 487 U.S. at 90, 108 S.Ct. at 2279, 101 L.Ed.2d at 91.

**28.** W.Va. Code, 62–3–3, reads, in pertinent part: "In a case of felony, twenty jurors shall be drawn from those in attendance for the trial of the accused. If a sufficient number of jurors for such panel cannot be procured in this way, the court shall order others to be forthwith summoned and selected, until a panel of twenty jurors, *free from exception*, be completed, from which panel the accused may strike off six jurors and the prosecuting attorney may strike off two jurors. The prosecuting attorney shall first strike off two jurors, and then the accused six. If the accused failed to strike from such panel the number of jurors this section allows him to strike, the number not stricken off by him shall be stricken off by the prosecuting attorney, so as to reduce the panel to twelve, who shall compose the jury for the trial of the case." (Emphasis added).

Utilizing the above standard of review, the prosecution contends the trial court did not clearly abuse its discretion in refusing to strike these jurors for cause. It asserts it would be proper for the jurors to consider evidence of the defendant's infidelity under Rule 402 of the Rules of Evidence when deciding the defendant's guilt because the infidelity evidence is relevant to motive and credibility but not determinative of the defendant's guilt.

Although it is permissible for a jury to review evidence of infidelity as long as it satisfies the requirements of the Rules of Evidence, if it is apparent during *voir dire* that a prospective juror would misuse or place improper weight on potentially prejudicial evidence, then that juror should be excluded for bias. In this case, both jurors gave some indication that if evidence of infidelity was presented at trial, then that fact alone might prejudice them against the defendant.

The responses of Ms. Mayle, the first juror challenged for cause by the defendant, were especially equivocal. During *voir dire*, Ms. Mayle admitted she would be immediately prejudiced against the defendant, irrespective of the facts, if evidence of infidelity was admitted at trial. When questioned whether she "could separate the fact you don't like what he was doing from the fact your deciding whether or not he murdered his wife[,]" Ms. Mayle could only reply "I think probably would. I would have to think about it. I don't think I would separate it, you know. If it was on going. If it happened three or four years and then this happened—might not be." After a thorough attempt by the trial court to rehabilitate this juror, there was still evidence Ms. Mayle would be unable to separate her own bias from her evaluation of the defendant's guilt. This fact is especially apparent when Ms. Mayle stated towards the end of her examination: "Not that I disapprove of adultery. I am saying it probably would influence me if I heard somebody had an affair and somebody got killed. *You just assume, you know.*" (Emphasis added). Finally, when asked whether she would listen to the remainder of the evidence before deciding upon the defendant's guilt, Ms. Mayle stated she would "[t]ry to."

The responses by this juror clearly indicated she had serious misgivings about her ability to separate her own assumptions regarding infidelity from the evidence of the case. If the juror was uncertain of her impartiality, we are also. Of course, it is proper to continue to question a juror to ascertain whether he or she understands his or her thoughts about a certain issue. However, when the juror can only say he or she would "try to" render an impartial verdict, the trial judge should seriously question the juror's actual ability to do so.

Mr. Hollen's bias was not as evident. However, we are still concerned that this juror admitted immediately that evidence of extramarital affairs would influence him. The juror did suggest that he could separate the infidelity from other evidence in the case. Even here we question if this actually would have been possible considering that Mr. Hollen consistently maintained such evidence could "tilt the scales" or "have some influence."

In cases of "grave" doubt, our recent cases would require the disqualification of the prospective juror. *See Davis v. Wang*, 184 W.Va. 222, 400 S.E.2d 230 (1990) (any doubt regarding a juror's impartiality must be resolved in favor of the party challenging the prospective juror). In this case, the jurors admitted it would be difficult to be "fair" and only reluctantly suggested they would listen to all the evidence. These circumstances certainly would have justified the trial court's sustaining the challenges for cause. *State v. Bennett*, 181 W.Va. 269, 382 S.E.2d 322 (1989); *State v. Matney*, 176 W.Va. 667, 346 S.E.2d 818 (1986). Barring equal protection considerations, *see generally Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), it cannot be overemphasized that no error is committed even when a qualified juror is struck as along as the remaining panel members are qualified. Rather, our cases demonstrate that a trial court risks error only when it refuses to strike jurors whose impartiality is questionable.

Nevertheless, the defendant bears the burden of showing that the prospective

jurors were actually biased or otherwise disqualified and that the trial court abused its discretion or committed manifest error when it failed to excuse them for cause. *Irvin v. Dowd,* 366 U.S. at 723, 81 S.Ct. at 1643, 6 L.Ed.2d at 756. Because of the nature of the questions asked, we have some reservation as to whether the defendant met his burden.[29] Giving deference to the trial court's determination, because it was able to observe the prospective jurors' demeanor and assess their credibility, it would be most difficult for us to state conclusively on this record that the trial court abused its discretion.

## III.

## CONCLUSION

For the forgoing reasons, we find the defendant's conviction should be reversed and a new trial granted. Therefore, we remand this case to the Circuit Court of Barbour County for proceedings consistent with this opinion.

Reversed and remanded.

BROTHERTON and RECHT, JJ., did not participate.

MILLER, Retired J., and FOX, Judge, sitting by temporary assignment.

WORKMAN, J., dissents and reserves the right to file a dissenting opinion.

WORKMAN, Justice, dissenting:

This case is an anomaly on the landscape of the well-settled law in West Virginia. The majority fails to adhere to the principles set forth in numerous cases in West Virginia and elsewhere in the country, effectively preventing the State from presenting key evidence of the Defendant's motive to commit murder.

Ironically, I take no real issue with the law stated by the majority. It is sound. But once again, there is a suspension of both common sense and adherence to our precedent in its application to the facts.

The majority incorrectly concluded that the testimony of four witnesses regarding statements made by the victim at a time close to her death were inadmissible. Simply stated, the statements were not hearsay, as they were not introduced for the truth of the matter asserted. *See* W.Va. R.Evid. 801(c).[1] The majority, however, adds insult to injury, by first incorrectly concluding that the statements were hearsay, and then proceeding to incorrectly conclude that the statements were inadmissible under West Virginia Rule of Evidence 803(3).

Although Justice Cleckley provides us with a wonderful little handbook on Rules 803(1) and (3), he misses the point that, although Rule 803(1) is the rule under which the trial court erroneously concluded that some of the statements were admissible, it is actually Rule 801(c) which permits their admission. The trial court judge made the right decision for at least partially the wrong reason. In the past, we have consistently held that "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466 (1965); *see also Cumberland Chevrolet Oldsmobile Cadillac, Inc. v. Gener-*

---

**29.** A thorough review of the record does not indicate the jurors were properly informed as to what proper use could be made of the infidelity evidence. The questions asked by defense counsel assumed they knew. It must be emphasized that the trial court ruled the evidence was admissible. Because of this ruling, the jurors had every right *to consider the evidence in their deliberations.* The questions asked by defense counsel only focused on whether the two jurors would use this evidence against the defendant. They replied yes. Until the jurors were adequately informed that evidence of the defendant's extramarital relationships could not be used as character or impeachment evidence, their re-

sponses to the questions should not have disqualified the jurors. "The jury is the trier of the facts and 'there is no presumption that they are familiar with the law.'" *State v. Lindsey,* 160 W.Va. 284, 291, 233 S.E.2d 734, 739 (1977), *quoting State v. Loveless,* 139 W.Va. 454, 469, 80 S.E.2d 442, 450 (1954).

**1.** The State was not attempting to prove that the Defendant committed adultery, or that the victim did in fact plan to leave the Defendant, and seek half their assets, but instead to prove circumstantially that she told the Defendant that, thereby giving him a motive to kill her.

*al Motors Corp.,* 187 W.Va. 535, 538, 420 S.E.2d 295, 298 n. 4 (1992) (stating that "even if the reasoning of a trial court is in error ... we are not bound by a trial court's erroneous reasoning"); *State ex rel. Dandy v. Thompson,* 148 W.Va. 263, 274, 134 S.E.2d 730, 737, *cert. denied,* 379 U.S. 819, 85 S.Ct. 39, 13 L.Ed.2d 30 (1964) (stating in criminal context that "correctness of ... [trial court's] final action is the only material consideration, not the stated reasons for [the trial court's] taking such action").

The majority proceeds to embark on its lengthy discussion of why these statements were inadmissible under West Virginia Rules of Evidence 803(1)[2] and 803(3), without first even determining whether the statements were in fact hearsay. Without any further analysis, the majority does state in footnote 25 that "[a]rguably, the statements could have been admitted as nonhearsay as proof of motive, intent, etc., under Rule 404(b)." In my view, the contested evidence here more closely approximates statements which circumstantially tend to show a relevant fact, namely that the Defendant had a possible motive. As the author of the majority opinion correctly states in his respected treatise on evidence, these types of statements are "perhaps the most frequently used justification to avoid exclusion under the hearsay rule." 2 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers,* § 8–2(A)(2)(c) at 123 (3d ed. 1994). In essence, the statements should be reviewed as original evidence because they were not offered to show the truth of the matter asserted. West Virginia Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Id.* In syllabus point one of *State v. Maynard,* 183 W.Va. 1, 393 S.E.2d 221 (1990), we held that

> [g]enerally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for

some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action....

*Id.* at 2, 393 S.E.2d at 222. In *Maynard,* we concluded that two police officers' testimony regarding an anonymous phone caller's statement to the officers implicating the defendant in a robbery were not hearsay, since the statements were not offered to prove the truth of the matter asserted, but rather were offered "to show the motive or reasonableness of the police officers' actions in including the defendant's photograph in a group of photographs shown to the victim." *Id.* at 4, 393 S.E.2d at 224.

Similarly, in *State v. Perolis,* 183 W.Va. 686, 398 S.E.2d 512 (1990), a case involving the defendant's alleged sexual assault of his babysitter, we analyzed whether the trial court erroneously precluded the development of evidence which tended to show that the victim may have been angry with the defendant and his wife because they had told the victim's parents about statements that the victim made to them which indicated that she was planning to run away from home. *Id.* at 690, 398 S.E.2d at 516. We determined that the victim's statement was not being offered for the truth of the matter asserted:

> Whether ... [the victim] planned to run away from home does not matter. The only thing that matters is that ... [the defendant and his wife] told ... [the victim's] parents that ... [the victim] planned to run away from home. The act of making such a statement to ... [the victim's] parents would give ... [the victim] cause to be angry with ... [the defendant and his wife], regardless of the truth of the statement.

*Id.* at 690–91, 398 S.E.2d at 516–17. Accordingly, we concluded that "[t]he evidence the defense was attempting to elicit was ... [not] irrelevant, ... because it would have enlightened the jury as to a possible motive for ... [the victim] to fabricate her story." *Id.* at 690, 398 S.E.2d at 516.

---

**2.** The majority is correct in its analysis that these statements would not be admissible under the

present sense impression exception to the hearsay rule. *See* W.Va. R. Evid. 803(1).

The majority never discusses [3] this line of cases and now leaves the lower courts confused on what the law is on statements of this sort. This kind of confusion does not aid the courts below in making sound, consistent evidentiary decisions.

Likewise, in *Peña v. State,* 864 S.W.2d 147 (Tex.Ct.App.1993), where the defendant was charged with the murder of his wife, the Texas court upheld a witness' testimony that the victim told her that she (the victim) was planning on leaving the defendant as soon as an income tax refund arrived, but that the check never arrived. *Id.* at 149. The *Peña* court concluded that the testimony was not offered to prove the truth of the matter asserted; "instead, it was offered to show her state of mind—she wanted to leave ... [the defendant] but felt economically trapped." *Id.*

In applying these same principles to the present case, the actual fact of whether the victim truly intended to divorce the Defendant or whether the Defendant was actually engaged in marital infidelities [4] is irrelevant. Thus, the testimony was not offered to prove the truth of these matters. The testimony was offered to circumstantially prove the Defendant's possible motive to murder his wife. Moreover, to conclude, as the majority essentially does, that these statements do not establish such a motive or that motive is irrelevant in a case where the Defendant claims "accidental killing" is, quite frankly, absurd!

Moreover, only the victim's statements concerning the Defendant's infidelities need be analyzed with regard to West Virginia Rule of Evidence 404(b), since it was only those statements which arguably could be character in nature. In syllabus points one and two of *State v. McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994), we set forth guidelines for admitting statements pursuant to Rule 404(b):

When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose. It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction.

Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as state in *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend

---

**3.** While the majority does set forth the syllabus point of *Maynard,* as restated in syllabus point two of *State v. Dillon,* 191 W.Va. 648, 447 S.E.2d 583 (1994), there is no discussion or application of that syllabus point to the present case.

**4.** Even more significant is the fact that the State offered *direct* evidence of the Defendant's extra-

marital affairs through the testimony of Ms. Marsh. It is difficult to believe that the Defendant suffered any prejudice with regard to the out-of-court statements concerning his affairs, given that direct evidence was presented on this matter.

that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

An examination of the lengthy in camera hearings which the trial court conducted in determining the admissibility of the statements (together with the fact that the State never offered the statements for anything other than proof of motive) reveals that all the same considerations as would be made in a Rule 404(b) hearing were made here. Hence, any error in discussing the issue in the context of the wrong rule would be harmless. Moreover, the fact that one of the witnesses had personal knowledge of the Defendant's infidelity satisfies the preponderance of the evidence burden established in *McGinnis*. *See* 193 W.Va. at 151, 455 S.E.2d at 520, Syl. Pt. 2.

Even assuming, arguendo, that these statements were hearsay, the majority incorrectly concludes that the statements were inadmissible under West Virginia Rule of Evidence 803(3).[5] The majority holds in syllabus point six that:

> An extrajudicial statement offered for admission under the state-of-mind exception of Rule 803(3) of the West Virginia Rules of Evidence must also be tested under the relevancy requirements of Rule 401 and Rule 402 of the Rules of Evidence. If the declarant's state of mind is irrelevant to the resolution of the case, the statement must be excluded.

Based on this syllabus point, the majority concludes that none of the statements were properly admitted under Rule 803(3)[6] because

[i]n this case, the declarant's state of mind was not directly in issue and was only remotely related to the issues in this case. The issue before the jury was whether the shooting was accidental. When standing alone, it was of no consequence to the jury's task whether the victim believed her husband had been unfaithful and she intended to pursue divorce proceedings.[7] (Footnote added).

In *State v. Wood*, 180 Ariz. 53, 881 P.2d 1158 (1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2588, 132 L.Ed.2d 836 (1995), the defendant was charged with the murder of his girlfriend. The state, at trial, introduced statements the victim made prior to her death which indicated that the victim was fearful of the defendant and that she desired to end their relationship. 881 P.2d at 1167. On appeal, the Supreme Court of Arizona upheld the introduction of these statements at trial, relying on general principles of relevancy, as well as Rule 803(3), stating that "[e]vidence is relevant 'if it has any basis in reason to prove a material fact in issue or if it tends to cast light on the crime charged.'" 881 P.2d at 1167 (quoting *State v. Moss*, 119 Ariz. 4, 579 P.2d 42, 43 (1978)). The *Wood* court further reasoned that

> [t]he statements about ... [the victim's fear and desire to end the relationship helped explain Defendant's motive. The disputed trial issues were Defendant's *motive* and *mental state*—whether Defendant acted with premeditation or as a result of a sudden impulse. The prosecution theorized the Defendant was motivated by anger or spite engendered by ... [the vic-

---

**5.** West Virginia Rule of Evidence 803(3) provides:

> *Then Existing Mental, Emotional, or Physical Condition.*—A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

**6.** Even Justice Cleckley admits, however, that the application of Rule 803(3) is a close call.

**7.** I find the majority's reasoning here almost amusing, it is so out of touch with common sense. They say the victim's state of mind was not directly in issue and only remotely related to the issues. They characterize the issue before the jury as being whether the shooting was accidental. Thus, they conclude the victim's state of mind as to her husband's infidelity is of no consequence. The true issue before the jury was whether the Defendant murdered his wife. Accordingly, the issue of the victim's state of mind and her husband's motive as a result thereof is of great consequence!

tim's] termination of the relationship. [The victim's] statements were relevant because they showed her intent to end the relationship, which in turn provided a plausible motive for premeditated murder.

881 P.2d at 1167–68 (footnote omitted). The court ultimately concluded that the statements were properly admitted under Rule 803(3). 881 P.2d at 1168.

Likewise, in *Nicholson v. State,* 319 Ark. 566, 892 S.W.2d 507 (1995), the victim, who was the defendant's husband, died of apparent natural causes. Upon closer examination, however, it became apparent that the victim ingested poison and his wife was charged with his murder. *Id.* at 508 and 507. The defendant wife, was not only the beneficiary of a $100,000 policy on the victim husband's life, but also was the beneficiary of the victim's will. *Id.* at 509. The victim's attorney was permitted to testify at trial that the victim told him that "he was unhappy in his marriage and intended to end it." *Id.* The Supreme Court of Arkansas in *Nicholson* upheld the admissibility of these statements under Rule 803(3). 892 S.W.2d at 510.

Further, in *United States v. Donley,* 878 F.2d 735 (1989), *cert. denied,* 494 U.S. 1058, 110 S.Ct. 1528, 108 L.Ed.2d 767 (1990), the United States Court of Appeals for the Third Circuit considered whether the district court properly permitted the victim's mother to testify to hearsay statements the murder victim made that she intended to move out of a military base apartment she shared with her defendant husband, as well as separate from the defendant. 878 F.2d at 737. The federal appeals court held that the statements were properly admitted under Rule 803(3), stating that

[t]he testimony went not to show that the defendant was soon to kill the declarant, but, rather, to show the existence of the deceased's plan to move out of the base apartment and separate from her husband. The government properly sought to persuade the jury to infer from her statements that she had such a plan and, in turn, to infer from that plan and the defen-

dant's awareness of it that he had a motive for murder....

878 F.2d at 737–38.

Finally, in *State v. Payne,* 327 N.C. 194, 394 S.E.2d 158 (1990), *cert. denied,* 498 U.S. 1092, 111 S.Ct. 977, 112 L.Ed.2d 1062 (1991), a case factually analogous to the present case, the defendant husband was charged with murdering his wife. The state's evidence against the defendant tended to show that the defendant intentionally shot and killed his wife with a single gunshot from a gun he had just finished cleaning. 394 S.E.2d at 159. While the defendant in *Payne* admitted that initially he had planned to kill his wife for insurance money and to get out of the marriage, he further claimed that he had changed his mind at the last instant, and that the gun truly discharged accidentally. *Id.* 394 S.E.2d at 164. The Supreme Court of North Carolina addressed whether the trial court properly admitted the victim's statements to the defendant, which were related by the defendant to police officers that concerned "the victim's questions to the defendant as to whether he wanted 'out of' their marriage, whether he was having an affair, and why the couple did not 'fool around' as much as they apparently did at one time." *Id.* 394 S.E.2d at 164. The *Payne* court upheld the admissibility of the victim's statements under Rule 803(3), stating that "[t]he victim's statements tended to show that the victim felt the ... marriage was troubled and had related her feeling to the defendant. Such evidence was relevant to corroborate one of the defendant's admitted motives for deciding to kill his wife—to 'get out of the marriage.'" 394 S.E.2d at 165.

These cases readily illustrate the majority's fallacious conclusion that the victim's statements were inadmissible to show motive under Rule 803(3). It is exceedingly evident in this case not only that motive was relevant to combat the defense of accidental shooting, but that motive could be derived from the victim's statements that she intended to divorce her husband and take half of their assets.

Finally, contrary to the majority's position that reversible error occurred in the admission of these statements, any error which may have occurred in the admission of any of

these statements was harmless.[8] As the majority reasoned,

> [w]hen dealing with the wrongful admission of evidence, we have stated that the appropriate test for harmlessness is whether, after stripping the erroneous evidence from the whole, we can say with fair assurance that the remaining evidence independently was sufficient to support the verdict and the jury was not substantially swayed by the error. *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980).

The majority then concludes that "[a]fter excluding all the impermissible evidence, we cannot say the jury would have arrived at the same result considering the pervasive nature of the evidence admitted[,]" without any real examination of the totality of the evidence the State presented in this case.

To arrive at its conclusion, the majority simply ignores the weight of the evidence introduced at trial. The State offered the testimony of a neighbor, Mrs. Harris, who contradicted the Defendant's story that he accidentally shot his wife with a shotgun in the living room of his home, then immediately called 911 and ran out of the house. Mrs. Harris testified that she did not hear a shotgun blast at the time the Defendant alleged he shot his wife. Further, Mrs. Harris, as well as another witness testified that they had observed the Defendant arriving home the morning his wife was shot wearing camouflage clothing, but no such clothing was ever recovered from the crime scene. Further, the Defendant claimed that his wife's body was found where she was shot while lying on the sofa; however, the State's forensic evidence showed that the body had been moved and gunpowder stippling patterns on the victim's body indicated that she had not been lying down at the time of the gunshot. Moreover, the Defendant testified that he had returned home from turkey hunting the morning of the shooting after he shot at a turkey and missed, expelled a shell, and the gun jammed. The Defendant further testified that when he returned home, he began to run shells through the chamber and that

the gun suddenly discharged killing his wife. The gun, however, was examined by the manufacturer and determined not to be defective. Thus, even without considering any of the statements, there was certainly ample evidence to sustain the Defendant's conviction due to the inconsistencies between the Defendant's statement to the police and what the evidence actually showed.

It is difficult to understand how Justice Cleckley, as West Virginia's leading expert on evidence, could have reasoned this opinion in this manner. I must conjecture that he wanted an opportunity to write on Rule 803, and the law he sets forth is excellent in the abstract. But on re-trial, the State will not have the benefit of the whole line of cases cited herein (and not overruled or declined to be followed by the majority) in presenting to the jury perfectly good and admissible evidence of the Defendant's motive.

For the foregoing reasons, I dissent.

---

8. The majority was certainly cursory in its review of this issue, giving it *one paragraph!*